**Jose DeMELO, Petitioner,**

v.

**Charles T. COBB, et al., Respondents.**

**Civil Action No. 96–10903–REK.**

United States District Court,
D. Massachusetts.

June 19, 1996.

Randy Olen, Warwick, RI, for Petitioner Jose DeMelo.

Kristen A. Giuffreda, David M. McConnell, United States Department of Justice, Civil Rights Division, Special Litigation Section, Washington, DC, Frank Crowley, Immigration & Naturalization, Special Assistant U.S. Attorney, Boston, MA, for Charles T. Cobb.

## Opinion

KEETON, District Judge.

In his Petition for Writ of Habeas Corpus filed May 3, 1996, Petitioner Jose DeMelo ("DeMelo") seeks to have this court order him released from the custody of the Immigration and Naturalization Service ("INS") pending the resolution of deportation proceedings. Now before the court is Respon-

dents' Motion to Dismiss (Docket No. 3, filed May 7, 1996). For the reasons explained below, the motion to dismiss will be denied.

### I.

Two hearings on this Petition were held before this court. At the first hearing, on May 7, 1996, Respondents raised the argument that the motion to dismiss must be allowed as a result of recently enacted legislation, the Antiterrorism and Effective Death Penalty Act of 1996 (the "Act" or "Antiterrorism Act"). Respondents argue that the Act applies to DeMelo and precludes the INS from releasing him.

After the hearing of May 7, Respondents filed a Supplemental Memorandum in Support of Motion to Dismiss (Docket No. 8, filed May 8, 1996), in which Respondents more fully developed their argument regarding the Act and its alleged effect on this case.

In a Memorandum and Order dated May 10, 1996, the court announced its provisional conclusion that the Antiterrorism Act does not apply to this case. As a result of that provisional conclusion and other determinations, the court ordered the INS to release DeMelo from custody temporarily, on May 10th.

The court did not, however, in its May 10, 1996 memorandum, finally decide Respondents' motion to dismiss. Instead, the court allowed the parties a further opportunity to brief and argue their respective contentions. A second hearing was scheduled for May 24, 1996.

Before the second hearing, Respondents filed a Second Supplemental Memorandum in Support of Motion to Dismiss (Docket No. 10, filed May 20, 1996). Petitioner filed a reply (Docket No. 11, filed May 23, 1996). At the hearing of May 24, 1996, both parties presented arguments to the court. The court took the motion to dismiss under advisement and extended DeMelo's temporary release pending further order of this court.

### II.

In reaching the conclusion that Respondent's motion to dismiss should be denied, the court has determined that the Antiterror-ism Act does not apply to this case. The reasoning behind this determination is grounded more in statutory interpretation than in constitutional law. Constitutional principles, however, guide the court's interpretation of the Act, primarily because accepting Respondent's proposed interpretation of the Antiterrorism Act would present substantial issues of constitutionality.

First, the application of the Act to DeMelo in this case would involve troubling elements of retroactivity. DeMelo is a long-term, resident alien who continues to maintain a residence in the United States. He had fully served, before the effective date of the Act, every sentence imposed on account of any conviction for a felony. Thus, application of a putative prohibition against any exercise of discretion by the Attorney General to allow DeMelo's release on bond, pending a hearing regarding deportation, raises serious due process issues. Moreover, even if a statutory mandate for retroactivity in some respects might be constitutionality permissible, issues remain as to whether the particular form and extent of retroactivity incident to Respondent's proposed interpretation of the Act could survive under the applicable standard of judicial scrutiny.

Second, Respondent's assertion that a resident alien has no legally protectible interest sufficient to support any claim of deprivation of either substantive or procedural due process runs afoul of precedent. The Supreme Court and the Court of Appeals for the First Circuit have repeatedly held that once an alien is lawfully admitted to the United States, that alien is protected by the Constitution.

> It is well established that if an alien is a lawful permanent resident of the United States and remains physically present there, he is a person within the protection of the Fifth Amendment. He may not be deprived of his life, liberty or property without due process of law.

*Kwong Hai Chew v. Colding,* 344 U.S. 590, 596, 73 S.Ct. 472, 477, 97 L.Ed. 576 (1953). More recently, the Court has reinforced this holding.

This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative. Our recent decisions confirm that view. As we explained in *Johnson v. Eisentrager,* 339 U.S. 763, 770 [70 S.Ct. 936, 939–40, 94 L.Ed. 1255 (1950) ], however, once an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly. Our cases have frequently suggested that a continuously present resident alien is entitled to a fair hearing when threatened with deportation, and, although we have only rarely held that the procedures provided by the executive were inadequate, we developed the rule that a continuously present permanent resident alien has a right to due process in such a situation.

*Landon v. Plasencia,* 459 U.S. 21, 32–33, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982) (citations omitted). The First Circuit, also, has observed that "Lawful permanent resident aliens ... enjoy, of course, the full protection of the United States Constitution." *Campos v. INS,* 961 F.2d 309, 316 (1st Cir.1992).

Respondents' argument that deportation proceedings are civil, not criminal, is misplaced. At issue before the court in this Petition is the *detention* of DeMelo pending his deportation, not the deportation itself. The Supreme Court has determined that the act of *deporting* an alien is civil rather than criminal. *See, e.g., INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984); *Harisiades v. Shaughnessy,* 342 U.S. 580, 594, 72 S.Ct. 512, 521, 96 L.Ed. 586 (1952). The Supreme Court has not held, however, that the *detention* of an alien is a purely civil matter, much less that the nature of a deportation proceeding precludes constitutional protection against detention without due process.

I need not, however, reach the constitutional issues raised by Respondent's proposed interpretation of the Act. Following settled precedent, I conclude that I should not decide on constitutional grounds the matter now before the court if the need to address constitutional issues is mooted by an appropriate interpretation of the Act that is contrary to Respondent's contention. *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988) ("Where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.")

In addressing issues of statutory interpretation, when the statutory text and context support not just one reasonable interpretation but two or more contrasting interpretations, at least one of which reasonable interpretations is contrary to that proposed by the governmental entity whose official action is challenged, a court at the least *may* weigh, as one among all the relevant matters considered, the improbability that Congress and the Chief Executive, in enacting and approving a statute, were manifesting an intent to disregard a constitutionally protected interest. "Congress, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it." *DeBartolo,* 485 U.S. at 575, 108 S.Ct. at 1397–98.

It is true that this case can be distinguished from both *DeBartolo* and *Plasencia. DeBartolo* did not involve aliens, immigration, or due process; the constitutional issues before the Court in that case involved First Amendment rights of citizens. *Plasencia,* as well, involved a factually different situation from this case; the primary issue before the Court in *Plasencia* was whether a resident alien is entitled to a deportation hearing rather than an exclusion hearing upon return to the United States.

These factual distinctions, however, are not material to the central points stated by the Court with respect to a court's sensitivity to potential constitutional constraints when determining what manifestations of intent a court can glean from the text of a statute.

Indeed, the facts of record in the case now before this court provide even more compelling support for finding an interest sufficient to invoke due process than did the record facts in *Plasencia.* The Petitioner in *Plasencia* was an alien who had lived in the United States as a legal resident for approximately five years before her trip to Mexico and her subsequent attempt to re-enter the United States. The Court held that she was entitled to at least some due process protection even though her case arose in the context of an exclusion hearing on her attempt to re-enter the country rather than a deportation hearing.

In the present case, the undisputed facts are that Petitioner DeMelo has been a permanent legal resident of the United State for almost thirty years. Moreover, DeMelo is facing deportation, not exclusion. As the Court noted in *Plasencia,* an alien is entitled to even more protection in deportation proceedings than in exclusion proceedings. *Landon v. Plasencia,* 459 U.S. at 25–26, 103 S.Ct. at 325–26.

■ For these reasons, the remainder of this opinion proceeds on the premise that a court may, as it construes the text of various provisions of the Act, do so sensible of constitutional constraints, even though not undertaking to decide the constitutional issues at this time.

### III.

The Antiterrorism Act was signed into law by the President on April 24, 1996. The Act is silent about the effective date of many of its provisions. Respondents argue that because the provisions of the Act that Respondents invoke are silent about their effective date, these provisions of the Act became effective upon enactment. *See Demars v. First Service Bank for Savings,* 907 F.2d 1237 (1st Cir.1990). For present purposes, the court will assume without deciding that Respondents are correct in asserting that the relevant provisions of the Act became effective when the President signed the Antiterrorism Act on April 24, 1996.

### A. Application of the Act would be Retroactive.

■ Respondents also contend that the Act applies to all cases pending at the time of enactment, as well as those cases later filed. Moreover, they argue that such an application does not constitute a retroactive application of the statute. *See Cox v. Hart,* 260 U.S. 427, 435, 43 S.Ct. 154, 157, 67 L.Ed. 332 (1922) ("A statute is not made retroactive merely because it relies upon antecedent facts for its operation.") The application of the Antiterrorism Act to DeMelo, however, would do more than just rely on antecedent facts for its operation; it would accomplish the practical equivalent of punishing DeMelo yet again for a crime for which he has already completed the sentence imposed upon him.

As noted in the court's May 10th memorandum, the conviction upon which the INS relies in its current deportation proceedings against DeMelo occurred over *three years* before the enactment of the Antiterrorism Act. On April 24, 1996, when the President signed the Act into law, DeMelo had already served every sentence imposed upon him as a result of that felony conviction. In January 1996, still three months before the enactment of the Act, DeMelo was arrested for driving while intoxicated and misdemeanor assault on a police officer. He was then detained by the INS, and he would have been released soon thereafter, were it not for the erroneous ruling of the Immigration Judge on March 11th.

In the May 10, 1996 memorandum, the court concluded that the Order of the Immigration Judge of March 11, 1996 was contrary to law when made. If the Immigration Judge had not made this erroneous Order, DeMelo would have been released from INS custody before the enactment of the Antiterrorism Act, and he would not be a petitioner in this court today. In these circumstances, the application of the Antiterrorism Act to DeMelo's case is retroactive. Respondents' argument to the contrary is rejected.

### B. The Presumption Against Retroactivity and the Requirement of a Clear Manifestation of Legislative Intent.

■ The Supreme Court recently addressed issues regarding the potential retro-

active application of statutes in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In that case, the Court analyzed the Civil Rights Act of 1991 and determined that the statute did not apply to cases pending at the time of the statute's enactment.

The facts and the arguments before the Court in *Landgraf* were somewhat similar to the facts and arguments before this court in this case. The section of the statute upon which the petitioner in *Landgraf* relied did not contain any language about its effective date. Two other sections of the 1991 Civil Rights Act, however, had specific text calling for *prospective* application of those sections. Petitioner in *Landgraf* argued that the Court should infer that because two sections of the 1991 Civil Rights Act are specifically prospective, all other sections of the statute are necessarily retrospective.

The Court rejected the petitioner's argument and refused to *infer* an intent to apply the remainder of the statute retrospectively. "Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1501. Significantly, the 1991 Civil Rights Act contained an introductory phrase, "Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." The Court held that this introductory phrase was not a clear manifestation of intent to apply the statute retroactively. *Id.* at ——, 114 S.Ct. at 1494 ("we find it most unlikely that Congress intended the introductory clause to carry the critically important meaning petitioner assigns it.")

Undeterred by the Court's ruling in *Landgraf,* Respondents in this case argue that this court should infer from Congressional silence an intent to apply the Antiterrorism Act retroactively. Respondents contend that because § 440(f) of the Act is specifically prospective in effect, by implication, § 440(c)— the section allegedly prohibiting DeMelo's release—is necessarily retrospective.

The primary difference between the argument of Respondents in this case and that of the unsuccessful petitioner in *Landgraf* is that the Antiterrorism Act does not contain an introductory phrase regarding the time of effectiveness of the Act in general. Respondents have seized on this difference to argue for a judicially created principle of construction favoring the Act's becoming effective upon enactment. This factual difference, however, only weakens the force of Respondents' argument.

The Court in *Landgraf* held that the introductory language in the 1991 Civil Rights Act was not a clear manifestation of an intent to apply the statute retrospectively. *A fortiori,* complete silence by Congress as to the date of effectiveness of a statute is not a clear statement of intent to apply the statute retrospectively. As the Court of Appeals for the First Circuit has stated, "In order to attribute retrospective effect to a statute, there must be found expression of the legislative will in terms so plain as to admit of no doubt that such was the intention." *Dion v. Secretary of Health and Human Services,* 823 F.2d 669 (1st Cir.1987) (citation omitted). Silence is not a plain statement of legislative intent.

Finally, Respondents' reliance on *Brown v. Gardner,* —— U.S. ——, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994), is misplaced. In that case, the Supreme Court cited the rule that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* at ——, 115 S.Ct. at 556 (citation omitted). Respondents fail to note, however, that the Court in *Gardner* was discussing the use of defined key terms in the statute when it cited the above rule. The Court was not discussing the timing of the effectiveness of a statute. It is a very different proposition to interpret, in a way supporting one among two or more options, the meaning of language in a statute about timing of one provision, not phrased in such a way that the meaning would support that option rather than another for the meaning of a different provision. In other words, even if an inference were to be drawn from silence, the statute contains no manifestation

that it should be the inference proposed by Respondents about the effective date.

As explained above, Respondents fail entirely to explain how their argument could be accepted in the face of the Supreme Court's holding in *Landgraf.* I conclude that a court should not infer that Congress intended the Antiterrorism Act to apply retroactively when Congress did not manifest such an intent through explicit and clear language.

## C. Interpreting § 440(c) of the Antiterrorism Act.

■ In the May 10, 1996 memorandum, the court announced its provisional conclusion that even if § 440 of the Antiterrorism Act applies to aliens convicted before April 24, 1996, it can not apply to aliens who are both convicted and *released* from incarceration before April 24, 1996. None of the Respondents' arguments in the Second Supplemental Memorandum has caused the court to alter this view.

The Immigration and Nationality Act, as amended by § 440 of the Antiterrorism Act provides:

> The Attorney General shall take into custody any alien convicted of any criminal offense covered in section ... *upon release of the alien from incarceration,* shall deport the alien as expeditiously as possible. Notwithstanding paragraph (1) or subsections (c) and (d) of this section, the Attorney General shall not release such felon from custody.

8 U.S.C. § 1252(a)(2) (emphasis added). The language used in the statute applies comfortably to taking an alien into custody immediately after the alien is released from incarceration on the underlying offense. As stated in the May 10 memorandum, I conclude that the language "upon release of the alien from incarceration" implies a time of release after the effective date of the Act.

The weight of considerations supporting the above conclusion is reinforced, not diminished, by the legislative history cited by Respondents. The statements of Senator Abraham included his understanding that the Antiterrorism Act would "require that aliens who are convicted of serious crimes in courts of law in this country be deported *upon completion of their sentences....*" 141 Cong.Rec. S7822 (daily ed., June 7, 1995) (emphasis added). Later, in that same statement, the Senator speaks of the *current* prison population and the percentage of *current prisoners* who are aliens. Nowhere in the legislative history cited by Respondents is there an indication that Congress manifested an intent that the Act apply to *former* prisoners who had already completed their sentences and had been released.

Finally, Respondents' proposed interpretation of the Act is undermined by their own actions. On May 7, 1996, the Office of the Deputy Commissioner of the INS issued a memorandum directing that aliens released before the enactment of the Antiterrorism Act should not be re-taken into custody notwithstanding § 440 of the Act. At oral argument, moreover, Respondents admitted that it would be infeasible for the INS to take into custody all currently free aliens who would be covered by the Act under Respondents' proposed interpretation.

Given the infeasibility of Respondents' compliance with the interpretation they propose, it seems unlikely that Congress would have manifested an intent to impose on Respondents an obligation to apply the Act to aliens who had already been released from incarceration before April 24, 1996. Also sensible of the constitutional concerns addressed in Part II of this Memorandum, as well as the text of the Act addressed in Part III, the court concludes that the Antiterrorism Act does not apply to DeMelo.

The Respondents' motion to dismiss will be denied.

## IV.

Remaining for consideration are issues of process and procedure not addressed in the submissions of the parties. The prayer of the Petition in this case is for issuance of a writ of habeas corpus requiring the Respondent to produce Petitioner, "together with the cause of his detention, to receive and abide by such order as may be made herein."

Should the court now order issuance of a writ or in some other way order that a Final

Judgment be entered? Or should the court instead order that the provisional order for release on bond remain in effect pending further developments in the related deportation proceeding, perhaps together with denying Respondents' motion to dismiss and allowing declaratory relief determining that the Antiterrorism Act does not apply to this case?

If the court does not order Final Judgment forthwith, does the court have authority and, if so, should it exercise whatever authority it has, to issue an order or orders designed to facilitate prompt appellate review?

For the moment, I conclude that it is appropriate not to enter any form of order purporting to close this case on the docket of this court. The likelihood that some development in the related deportation proceedings would create a need for reconsideration is substantial. Thus, a need exists, if the court orders that Final Judgment is to be entered, that the court be explicit about retention of jurisdiction to consider any request for modification to adapt to developing circumstances.

I conclude that it is more appropriate to issue an Interlocutory Order: (1) denying Respondents' motion to dismiss; (2) ordering that the Order of May 24, 1996 for release of Petitioner on bond remain in effect pending further order of this or a higher court; (3) declaring that the Antiterrorism Act does not apply to this case in its present posture; and (4) setting a status and scheduling conference.

Each of the parties will be free to file at any time a motion for modification of this Interlocutory Order upon a showing of a material change of circumstances or other good cause.

### INTERLOCUTORY ORDER

For the foregoing reasons, it is ORDERED:

(1) Respondents' Motion to Dismiss (Docket No. 3, filed May 7, 1996) is DENIED.

(2) The Order of this court of May 24, 1996 for release of Petitioner on $500 bond will remain in effect pending further order of this or a higher court.

(3) The court declares that the Antiterrorism and Effective Death Penalty Act of 1996 does not apply to this Petitioner in the present posture of his deportation proceedings.

(4) A status and scheduling conference is set for September 24, 1996 at 2:00 p.m.