Ysaias QUEZADA–BUCIO, Petitioner,

v.

Tom RIDGE, et al., Respondents.

No. C03–3668L.

United States District Court,
W.D. Washington,
at Seattle.

May 10, 2004.

Robert Pauw, Gibbs Houston Pauw, Seattle, WA, for Ysaias Quezada–Bucio, Petitioner.

Christopher Lee Pickrell, U.S. Attorney's Office, Seattle, WA, for Tom Ridge, Respondent.

## AMENDED ORDER DENYING MOTION TO DISMISS AND GRANTING HABEAS PETITION

LASNIK, District Judge.

### I. INTRODUCTION

This matter comes before the Court on a report and recommendation (the "R & R") (Dkt.# 16) issued by the Honorable Mary Alice Theiler, United States Magistrate Judge, and a superseding motion to dismiss (Dkt.# 17) filed by Respondents Tom Ridge, *et al.* (collectively, "Respondents"). For the reasons set forth in this Order, the Court denies the motion to dismiss, adopts the R & R, and grants Petitioner's petition for writ of habeas corpus.

### II. DISCUSSION

#### A. Background.

The facts regarding Petitioner's removal proceedings through January of 2004 are set forth in the R & R. *See* R & R at 2–4. On February 4, 2004—the day before issuance of the R & R—the Board of Immigration Appeals ("the BIA") denied Petitioner's appeal of his order of removal. On the basis of the BIA's order, Respondents contend that Petitioner's habeas corpus petition is moot and should be dismissed. (Motion to Dismiss at 2).

#### B. Analysis.

##### 1. Motion to Dismiss.

On August 26, 2003, Petitioner filed a habeas corpus petition under 28 U.S.C. § 2241, which challenges his continued detention pursuant the mandatory detention provisions of Immigration and Nationality Act ("INA") § 236(c), 8 U.S.C. § 1226(c). On February 4, 2004, the BIA affirmed the Immigration Judge's September 9, 2003 order of removal. *See* Motion Ex. 1. Respondents contend that the BIA decision converts his detention pursuant to INA § 236(c) to detention under INA

§ 241(a)(2), 8 U.S.C. § 1231(a)(2). *Id.* at 2–3.

Petitioner contends that a Ninth Circuit order in *United States v. Passares–Galan,* 02–10532, issued on February 20, 2004, shows that both the Immigration Judge and the BIA erred in finding that Petitioner's Washington State conviction for communication with a minor for immoral purposes constitutes sexual abuse. On this basis, on February 26, 2004, Petitioner filed an appeal of the BIA's decision with the Ninth Circuit. *See* Petitioner's Reply to Amended Return and Response to Motion to Dismiss (Dkt.# 18) Ex. 1. Petitioner contends that because he has appealed the BIA's decision and because his removal has been stayed pursuant to *DeLeon v. INS,* 115 F.3d 643 (9th Cir.1997), his custody is still governed by INA § 236 rather than INA § 241.[1]

INA § 241(a)(1)(B) provides that:

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

Another subsection of INA § 241 provides:

During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

INA § 241(a)(2). Petitioner argues that prior to commencement of the removal period "if there is no final administrative order or if a court has stayed the removal in order to allow for judicial review ... § 241(a)(2) does not apply. Instead, custody issues are resolved under § 236(a), 8 U.S.C. § 1226(a), pursuant to which 'the Attorney General ... may release the alien on bond of at least $1,500.'" (Petitioner's Reply to Amended Return and Response to Motion to Dismiss at 4). Respondents contend that "once ... an alien's removal order becomes administratively 'final' (i.e., upon issuance of the BIA's decision), detention authority reverts from INA § 236 to INA § 241(a)." (Respondents' Reply at 2 (citing *De La Teja v. United States,* 321 F.3d 1357, 1362–63 (11th Cir.2003))).

The Court recognizes that courts have issued published opinions that reach different conclusions regarding whether detention shifts from INA § 236 to INA § 241 when the order of removal becomes "final" or rather when the "removal period begins." *Compare De La Teja v. United States,* 321 F.3d 1357, 1362–63 (11th Cir. 2003) ("Because a final removal order has been entered, De La Teja is no longer being detained pursuant to [INA § 236(c)], which governs *only* detention prior to a final removal order.")[2] (empha-

---

1. Respondents clarify that Ninth Circuit General Order 6.4.c codified the Ninth Circuit's decision in *DeLeon v. INS,* 115 F.3d 643 (9th Cir.1997) regarding stays of deportation or removal while petitions for review are pending. Execution of a final order of deportation or removal is automatically temporarily stayed upon filing of a request for stay of deportation or removal in a petition for re-

view of a deportation or removal order. Petitioner included a motion for a stay of the removal order with his petition for review. Therefore Petitioner's removal order is stayed.

2. However, the *De La Teja* Court noted that, unlike Petitioner, De La Teja had entered the removal period. *De La Teja,* 321 F.3d at 1363

sis in original), *with Clavis v. Ashcroft,* 281 F.Supp.2d 490, 493 (E.D.N.Y.2003) ("Because the court entered a temporary stay of deportation, up to this point petitioner has remained in INS custody pursuant to Section 236."), *and Milbin v. Ashcroft,* 293 F.Supp.2d 158, 161 (D.Conn.2003) ("Until this decision is filed, Milbin continues to be subject to mandatory detention under § 236(c), as this Court's stay order ... remains in effect."). The Court finds that an alien is not subject to INA § 241 detention until the removal period begins. Therefore the mandatory detention provisions of INA § 241 do not apply to Petitioner. The "removal period" does not begin until the latest of:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

INA § 241(a)(1)(B). Section 241 authorizes detention "[d]uring the removal period." INA § 241(a)(2). Because Petitioner's removal order has been stayed by the Ninth Circuit pending its review of the BIA decision, the "removal period" has not yet commenced, and Petitioner therefore is detained pursuant to INA § 236.

Because the Court finds that Petitioner is subject to detention pursuant to INA § 236, the Court denies Respondents' motion to dismiss for mootness.

### C. Report and Recommendation.

In the R & R, Judge Theiler recommended that the Court enter an order granting Petitioner's petition for writ of habeas corpus on the grounds that the Immigration Judge incorrectly determined that Petitioner is subject to mandatory detention under INA § 236(c). Having considered the R & R, the parties' submissions, and other records on file in this matter, the Court finds Judge Theiler's analysis of the "when released" term of INA § 236(c) and the Honorable William L. Dwyer's analysis of that term in a similar context to be correct. *See* R & R at 5–11; *Pastor–Camarena v. Smith,* 977 F.Supp. 1415 (W.D.Wash.1997). The Court therefore finds that because Petitioner was taken into immigration custody years after he was released from state custody, as opposed to "when [he was] released" from that custody, INA § 236(c) does not apply.

### III. CONCLUSION

For the foregoing reasons, the Court FINDS and ORDERS as follows:

(1) The Court ADOPTS the Report and Recommendation and DESIGNATES it as an appendix to this Order;

(2) The Petition for Writ of Habeas Corpus (Dkt.# 1) is GRANTED;

(3) This matter is REMANDED to the Seattle Immigration Court for the purpose of providing Petitioner with an individualized bond hearing within 30 days of the date of the original Order Denying Motion to Dismiss and Granting Habeas Petition (Dkt.# 21). The Immigration Judge is ORDERED to determine, based on the standard set forth in INA § 236(a), whether, and under what conditions, Petitioner may be released from custody;

(4) Respondents' motions to dismiss (Dkt.##5, 17) are DENIED; and

("Since De La Teja has been found inadmissible under § 1182(a)(2) and is currently subject to the 90–day removal period, the Attorney General unquestionably has the authority to detain him.").

(5) The Clerk of the Court is directed to send copies of this Order to all counsel of record, and to the Honorable Mary Alice Theiler.

## APPENDIX

## AMENDED REPORT AND RECOMMENDATION

### *INTRODUCTION*

Petitioner is a native and citizen of Mexico who is currently in the custody of the Bureau of Immigration and Customs Enforcement ("BICE").[1] On August 26, 2003, he filed, through counsel, a habeas corpus petition under 28 U.S.C. § 2241, which challenges his continued detention pursuant to the mandatory detention provision, section 236(c), of the Immigration and Nationality Act ("INA"). (Dkt.# 1). Respondents have moved to dismiss this case, arguing that petitioner's detention is lawful because it is mandated by INA § 236(c) while he is "in removal proceedings." (Dkt.# 5).

Having reviewed the entire record, including the habeas petition and brief in support (Dkts. # 1 and # 2), respondents' return and status report ("RSR") and motion to dismiss (Dkt.# 5), petitioner's response to the motion to dismiss (Dkt.# 7), respondents' reply to petitioner's response (Dkt.# 9) and supplemental authority in support (Dkt.# 15), and the balance of the record, I recommend that the Court GRANT petitioner's habeas petition, and DENY respondents' motion to dismiss.

### *BACKGROUND*

The parties apparently agree on petitioner's immigration and criminal background. (*See* Dkts. # 1, # 2 and # 5). Petitioner, Ysaias Quezada–Bucio, came to the United States from Mexico in 1984. He has been a lawful permanent resident since 1990. (Dkt. # 2 at 2). On June 5, 2000, he pleaded guilty in Lewis County Superior Court to Communication with a Minor for Immoral Purposes. (Dkt. # 2, Exhibit 5). As a result, he was sentenced to 35 days in jail, followed by a suspended sentence of 330 days. (Dkt. # 2 at 2). Petitioner completed his sentence in June of 2000, and is no longer subject to state custody or supervision. It also appears that petitioner has had no further criminal conduct.

Petitioner was taken into custody by immigration officers on or about August 13, 2003. (Dkt. # 2 at 2). He was served with a Notice to Appear, placing him in removal proceedings, and alleging removability for having committed an aggravated felony as defined by the INA. (Dkt. # 2, Exhibit 5). On September 9, 2003, an Immigration Judge ("IJ") found petitioner removable as charged, and determined that he is not eligible for release on bond because, as an aggravated felon, his detention is mandated under INA § 236(c). (Dkts. # 2 at 2 and # 5 at 1–2). Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on October 7, 2003, and that appeal is still pending. (Dkt. # 5 at 2).

Petitioner filed the instant habeas petition on November 24, 2003, along with a motion for a temporary restraining order. (Dkts. # 1 and # 2). On November 28, 2003, respondents filed their return and

---

1. Pursuant to the Homeland Security Act of 2002, 116 Stat. 2135, Pub.L. 107–296, *codified at* 6 U.S.C. § § 101, *et seq.*, alien detention, deportation, and removal functions were transferred from the Department of Justice to the Department of Homeland Security ("DHS") on March 1, 2003. 6 U.S.C. § 251 (2002). Within the DHS, the former Immigration and Naturalization Service ("INS") was reorganized into three bureaus serving separate functions. The BICE is responsible for deportations and investigations. The Court will reference both the INS and the BICE within this R & R.

status report and opposition to petitioner's motion. (Dkt.# 5). On December 2, 2003, the Honorable Robert S. Lasnik, United States District Judge, denied petitioner's motion, and referred his habeas petition to the undersigned Magistrate Judge. (Dkt.# 6). That same day, petitioner filed a reply to respondents' opposition and return. (Dkt.# 7).

On December 24, 2003, the undersigned Magistrate Judge issued her Report and Recommendation ("R & R") in the instant proceedings. (Dkt.# 10). However, shortly before the R & R was posted into the Court's electronic docketing system, respondents filed an additional brief. (Dkt.# 9). Because there were only 13 minutes between the time the brief was posted and the time the R & R was posted, it did not appear that the undersigned Magistrate Judge had considered the brief before issuing her R & R. (*See* Dkt. # 11). Thus, on January 8, 2004, respondents filed a Motion for Reconsideration, asking that the R & R be reconsidered to address the issues raised in their reply brief. (Dkt.# 11). On January 9, 2004, the Honorable Robert S. Lasnik, United States District Judge, granted respondents' request, and referred the instant proceedings back to the undersigned Magistrate Judge for reconsideration. (Dkt.# 12).

On January 13, 2004, petitioner replied to respondents' objections. (Dkt.# 13). Respondents then filed supplemental authority in support of their position. (Dkt.# 15). The briefing is now complete and the matter is ripe for review.

### DISCUSSION

Petitioner's sole claim is that the IJ incorrectly determined that he is subject to mandatory detention under INA § 236(c). (Dkt. # 7 at 3). The statute is question states:

(1) Custody. The Attorney General shall take into custody any alien who—

(A) is inadmissible by reason of having committed any offense covered in section 212(a)(2) [8 USCS §§ 1182(a)(2) ],

(B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) [8 USCS §§ 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) ],

(C) is deportable under section 237(a)(2)(A)(i) [8 USCS §§ 1227(a)(2)(A)(i) ] on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 212(a)(3)(B) [8 USCS §§ 1182(a)(3)(B) ] or deportable under section 237(a)(4)(B) [8 USCS §§ 1227(a)(4)(B) ],

**when the alien is released**, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

INA § 236(c)(1) (emphasis added). Petitioner argues that the statute does not apply to him because he was not taken into custody "when he was released" from state custody; rather, he was detained nearly three years later. (Dkts. # 1, # 2 and # 7). Therefore, petitioner asserts that he is eligible for release on bond while his immigration proceeding is pending, pursuant to INA § 236(a).

Respondents initially argued that this Court lacked jurisdiction to review petitioner's custody challenge because he failed to exhaust his administrative remedies. (Dkt. # 5 at 3). However, respondents have since conceded that petitioner's administrative remedies have been exhausted, "at least in regard to the bond request and denial." (Dkt. # 9 at 1). But

respondents maintain that this Court lacks subject matter jurisdiction to review petitioner's claims because INA § 236(e) prevents courts from "setting aside" bond decisions. (Dkt. # 9 at 2 n. 1).

Respondents next argue that if the Court determines that jurisdiction does exist, the U.S. Supreme Court's recent decision in *Demore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), holding that mandatory detention of lawful permanent residents during their removal proceedings does not violate their due process rights, controls petitioner's case, and his detention is entirely lawful.[2] (Dkt. # 5 at 2). Respondents further argue that the authority upon which petitioner bases his position has been rejected by the BIA, and therefore, this Court should give deference to that decision. (Dkt. # 9 at 3–5). The Court is not persuaded by respondents. For the reasons set forth below, the Court finds that it does have jurisdiction to review petitioner's detention challenge, and that petitioner should be provided with a bond hearing immediately.

### 1. Lack of Subject Matter Jurisdiction

Respondents argue that the INA explicitly forbids this Court from reviewing petitioner's detention claim, citing to INA § 236(e) in support of their argument. (Dkt. # 9 at 2 fn. 1). Section 236(e) provides that "[n]o court may set aside any action" or decision by the Attorney General regarding the detention or release or any alien or the grant, revocation, or denial of bond or parole. *See* INA § 236(e).

However, the Supreme Court's decision in *Demore v. Kim, supra,* has made clear that the statute does not bar habeas review of statutory or constitutional challenges to detention. *Kim,* 123 S.Ct. at 1714. Additionally, while the country's Courts of Appeals have been split as to whether § 236(e) limits the Court's habeas jurisdiction, the courts of the Ninth Circuit have traditionally held that it does not eliminate habeas challenges to mandatory detention on constitutional grounds. *See e.g., Van Eeton v. Beebe,* 49 F.Supp.2d 1186 (D.Or.1999), *appeal dism'd as moot,* No. 99–35470, 2000 WL 1273924, 2000 U.S.App. LEXIS 22741 (9th Cir.2000) (holding that INA § 236(e) does not eliminate court's jurisdiction to hear constitutional challenges); *see generally INS v. St. Cyr,* 533 U.S. 289, 307, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (stating that there is a strong tradition in habeas law that subjects the claim of failure to exercise discretion, unlike a claim of an unwise exercise of discretion, to inquiry on the writ). Accordingly, the Court does not find that section 236(e) limits its jurisdiction in this case.

### 2. Mandatory Detention

The Court must now examine whether Congress intended to subject those aliens who are released from state custody and not immediately taken into immigration custody to mandatory detention under INA § 236(c), even when they have been taken into immigration custody months or years after their release.[3] As noted above,

---

**2.** The Court notes that respondents also present an extensive argument pertaining to petitioner's contention that his conviction, Communication With a Minor, is not an "aggravated felony" as defined by the INA. (*See* Dkts. # 5 at 4 and # 9 at 2–3). The only issue currently before this Court is whether petitioner is being lawfully detained in immigration custody pursuant to INA § 236(c).

(Dkt. # 7 at 3). Accordingly, the Court will not address the aggravated felony issue.

**3.** In this R & R, when the Court discusses aliens released from state custody, it is referring only to that group of aliens who would be subject to mandatory detention for having committed one of the enumerated offenses or for being inadmissible or deportable as noted in the statute. *See* INA § 236(c).

the BIA has explicitly determined that mandatory detention applies no matter when the subject alien is taken into custody.[4] *Matter of Rojas, supra.* However, as petitioner notes, "it is the federal courts, not the Board, that have the ultimate authority to interpret the statute." (Dkt. # 7 at 5). *See Chevron, U.S.A.,* 467 U.S. at 843 n. 9, 104 S.Ct. 2778; *see also New York v. FERC,* 535 U.S. 1, 18, 122 S.Ct. 1012, 152 L.Ed.2d 47 (2002) (explaining that the Court must interpret the statute to determine whether Congress granted the agency the power to act as it has). The Court now finds that Congress intended mandatory detention to apply only to those aliens taken into immigration custody immediately after their release from state custody.

When reviewing an agency's interpretation of a statute, the Court must apply established canons of statutory construction. *I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 431, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). The words used are to be given their ordinary meaning, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and the language in question is to be construed in harmony with related provisions and the statute as a whole. *K Mart Corp. v. Cartier Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). Furthermore, the language should not be construed in a way that renders a term surplusage. *United States v. Menasche,* 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955). If the language regarding intent is ambiguous, the Court must defer to the agency's reasonable interpretation of the statute. *Chevron, U.S.A.,* 467 U.S. at 843, 104 S.Ct. 2778. If the language of the statute is not ambiguous, the intent of Congress must be given effect. *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999); *Chevron, U.S.A.,* 467 U.S. 837 at 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694. An agency's interpretation may be overturned only if it is arbitrary, capricious, or manifestly contrary to law. *Chevron, U.S.A.,* 467 U.S. at 842–43, 104 S.Ct. 2778.

Petitioner argues that if Congress "had intended to make the statute applicable to individuals regardless of when they were released or taken into custody by the Service, it could easily have included language to that effect." (Dkt. # 2 at 8). Thus, the absence of that specific language demonstrates that Congress intended the statute to apply only to those aliens who were taken into custody at the moment they were released from state custody. (Dkt. # 2 at 8–9).

Although the Ninth Circuit Court of Appeals has never resolved petitioner's argument, it is not unsupported. In *Pastor–Camarena v. Smith,* 977 F.Supp. 1415 (W.D.Wash.1997), the late Judge William L. Dwyer, of this Court, examined the term "when released" in the context of a transition rule case.[5] The Court deter-

**4.** The United States District Court for the Northern District of Texas apparently agrees with that reasoning. *See Serrano v. Estrada,* 201 F.Supp.2d 714 (N.D.Tex.2002) (holding that there is no retroactivity concern with the application of INA § 236(c) to aliens taken into detention after the IIRIRA permanent rules became effective).

**5.** Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009, on September 30, 1996. The Act included transitional rules that were effective from October 9, 1996 to October 8, 1998, after which the permanent rule, codified at INA § 236, took effect. Congress used the same language pertaining to mandatory detention in the transitional rule, as it does in the permanent rule. *See* IIRIRA § 303(b)(3), *found at* 8 U.S.C. § 1101 (notes).

mined that the mandatory detention statute did not apply to aliens who had been taken into custody years after they had been released. Judge Dwyer explained:

> The context and structure of the statute make it clear that the "when the alien is released" language of IIRIRA, §§ 303(b)(3)(A), must apply to aliens who are being released from incarceration on the underlying offense.

> . . . . .

> Before the recent amendments to the INA, section 242(a)(2)(B) of the Act, 8 U.S.C. §§ 1252(a)(2)(B), governed the detention of aliens with criminal convictions pending deportation proceedings. Section 242(a)(2) of the Act was amended by section 440(c) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), to govern the custody and detention of most criminal aliens. This new language, suspended by the transition rules, provides that the

>> Attorney General shall take into custody any alien convicted of any criminal offense [specified in deportation sections], upon release of the alien from incarceration, . . .

> AEDPA §§ 440(c), 8 U.S.C. §§ 1252(a)(2). The plain meaning of this language is that it applies immediately after release from incarceration, not to aliens released many years earlier. *See, e.g., Grodzki v. Reno*, 950 F.Supp. 339, 342 (N.D.Ga.1996); *Montero v. Cobb*, 937 F.Supp. 88 (D.Mass. 1996).

> In this context, it was arbitrary and capricious for respondents to interpret the language of IIRIRA §§ 303(b)(3) to include aliens, like petitioner, who were released from incarceration many years before coming into the custody of the INS for deportation proceedings.

*Pastor–Camarena,* 977 F.Supp. at 1417–18.

Similarly, in *Alikhani v. Fasano,* 70 F.Supp.2d 1124 (S.D.Cal.1999), the District Court explained that because the term "when" is defined as "just after the moment that," the statutory language clearly intends that mandatory detention only applies to aliens who are detained at the time of their release. *Alikhani,* 70 F.Supp.2d at 1130; *see also Velasquez v. Reno,* 37 F.Supp.2d 663, 672 (D.N.J.1999) (holding that the plain language of the statute provides that an alien is to be taken into custody at the time the alien is released).

Respondents answer that these cases are "irrelevant" to petitioner's case because they address the transitional rule and not the permanent rule. (Dkt. # 5 at 4–5). Respondents also assert that the cases are irrelevant because they address the question of whether the rule could be applied retroactively to aliens released prior to the statute's effective date. Respondents argue that, for those reasons, the "when released" issue does not arise in petitioner's case. (Dkt. # 5 at 5). Finally, respondents also argue that the rationale in those cases has been superseded by more recent BIA decisions, and that under *Chevron, U.S.A., supra,* and *INS v. Aguirre–Aguirre,* 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999), this Court should give deference to that decision. (Dkts. # 9 at 3–5 and # 11 at 2). The Court is not persuaded.

While the question presented to the Court in *Pastor–Camarena* and the question presented in the instant case differ, in that *Pastor–Camarena* concerned the retroactive application of INA § 236(c) to an alien subject to IIRIRA's transitional rules not permanent rules, the reasoning remains the same: "The plain meaning of this language is that it applies immediately after release from incarceration, not to

aliens released many years earlier." *Pastor–Camarena*, 977 F.Supp. at 1417 (citations omitted). The language used in the transitional rule is exactly the same as that used in the permanent rule. *See* IIRIRA § 303(b)(3), *found at* 8 U.S.C. § 1101 (notes), and INA § 236(c). Thus, in accordance with the rules of statutory construction, the language in question should be interpreted in the same way. *See K Mart Corp. v. Cartier Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). That interpretation would follow the same logic as the Supreme Court's long-standing rule that identical words used in different parts of the statute must have the same meaning. *See Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 203 n. 12, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993).

Furthermore, the statute in effect prior to INA § 236(c) and IIRIRA § 303(b)(3)— former INA § 242(a)(2)—contained the similar language "upon release of the alien from incarceration," and several federal courts have determined that that statute did not apply to aliens taken into immigration custody several years after they had been released from state custody. *See e.g., Montero v. Cobb*, 937 F.Supp. 88, 95 (D.Mass.1996); *DeMelo v. Cobb*, 936 F.Supp. 30, 36 (D.Mass.1996), *vacated*, 108 F.3d 328, 1997 WL 85794 (1st Cir.1997) (holding that the question had been mooted by the passage of IIRIRA). Additionally, "the clear language of the statute indicates that the mandatory detention of aliens 'when' they are released requires that they be detained at the time of release." *Alikhani*, 70 F.Supp.2d at 1130. Thus, if Congress had intended for mandatory detention to apply to aliens at any time after they were released, it easily could have used the language "*after* the alien is released," "regardless of when the alien is released," or other words to that effect. Instead, Congress chose the word "when," which connotes a much different meaning.

Likewise, an examination of the legislative history of IIRIRA also demonstrates an intent for detention upon an alien's release. In explaining the various passages of IIRIRA, the legislature stated that mandatory detention was meant to apply "whenever such an alien is released from imprisonment, regardless of the circumstances of the release." House Conf. Rpt. No. 104–828 at 210–11 (Sept. 24, 1996). Presumably, with that comment, the legislature was seeking to thwart arguments by aliens that because they were subject to parole or other community supervision they could not be taken into immediate immigration detention because that would result in a violation of their imposed conditions. The Court is not persuaded that the legislature was seeking to justify mandatory immigration custody many months or even years after an alien had been released from state custody.

 The Court also disagrees with respondents that the BIA's decision in *Matter of Rojas, supra*, should be accorded great deference. (Dkt. # 11 at 2). The United States Supreme Court has held that the federal courts should defer to an agency decision only when the statute, "applying the normal 'tools of statutory construction,' [is] ambiguous." *St. Cyr*, 533 U.S. at 320 n. 45, 121 S.Ct. 2271 (citing to *Chevron, U.S.A.*, 467 U.S. at 843 n. 9, 104 S.Ct. 2778 and *Cardoza–Fonseca*, 480 U.S. at 447–48, 107 S.Ct. 1207). As already determined above, the language of INA § 236(c) is not ambiguous.

Finally, the Court is not persuaded by respondents' contention that applying the rule from *Pastor–Camarena, supra*, to the instant case would raise such "serious questions of public policy" that this Court should not follow its reasoning. (Dkt. # 9 at 5). Respondents argue that some of the

Department of Homeland Security's programs would be "substantially thwarted" if only those aliens already in custody could be targeted for removal proceedings and maintained in detention, "leaving hundreds or thousands of past convicts, believed to be deportable, at large in the community on bonds." (Dkt. # 9 at 5). The connection between that argument and the instant situation is untenable. Petitioner was released from state custody, and then continued to live in the community without further criminal conduct. It does not appear that he attempted to elude authorities at any time, and the BICE was able to find him and serve him with a Notice to Appear, to which he subsequently responded by appearing at his removal proceedings. Nothing about applying the *Pastor–Camarena* to petitioner's situation convinces this Court that, as a matter of public policy, the Department of Homeland Security should be allowed to continue detaining him years after he has been released from state custody, especially when this Court has determined that continued detention violates the statute. Moreover, applying the *Pastor–Camarena* rule to petitioner's situation does not guarantee that petitioner will be released. Rather, petitioner will be provided with the opportunity to demonstrate at a bond hearing that he is not a danger to the community, that he is not a flight risk, and that he deserves to be out on bond.

Accordingly, the Court agrees with petitioner that the mandatory detention statute, INA § 236(c), does not apply to aliens who have been taken into immigration custody several months or several years after they have been released from state custody.[6] (*See* Dkt. # 7 at 6). The Court also agrees that those aliens should be provided with individualized bond hearings pursuant to INA § 236(a). (*See* Dkt. # 2 at 3–5).

### CONCLUSION

Based on the foregoing analysis, the court should GRANT petitioner's Petition for Writ of Habeas Corpus (Dkt.# 1) and should DENY respondents' Motion to Dismiss. (Dkt.# 5). This matter should be REMANDED to the Seattle Immigration Court for the limited purpose of providing petitioner with an individualized bond hearing within *30 days of the date of this Order.* The IJ would then determine, based on the standard set forth in INA § 236(a), whether, and under what conditions, petitioner may be released from custody pending the resolution of his appeal before the BIA. A proposed order accompanies this Report and Recommendation.

---

6. The Court distinguishes this Report and Recommendation ("R & R") from its recent decision in *Singsanavong v. Ashcroft,* Case No. C03–2329FDB, and R & R in *Lopez v. Ashcroft,* Case No. C03–2632L. Those cases differ from the present case in that the petitioners had been immediately taken into immigration custody after release from state prison, and then had been released for several months before being re-detained by immigration authorities.