**Jean Walensky OSCAR, Petitioner,**

v.

**Brian GILLEN, Respondent.**

**Civil Action No. 08–11413–JLT.**

United States District Court,
D. Massachusetts.

Feb. 3, 2009.

Kerry E. Doyle, Graves & Doyle, Jeanette Kain, Kaplan, O'Sullivan & Friedman, LLP, Boston, MA, for Petitioner.

Mark J. Grady, United States Attorney's Office, Boston, MA, for Respondent.

## MEMORANDUM & ORDER

TAURO, District Judge.

In this Immigration and Nationality Act ("INA") case, Petitioner Jean Walensky Oscar challenged his confinement without a bond hearing by petitioning for a writ of habeas corpus. Presently at issue are Petitioner's *Motion for Attorney Fees* [# 20] and *Motion for Costs* [# 21]. For the following reasons, *Petitioner's Motion for Attorney Fees* is ALLOWED IN PART and DENIED IN PART, and *Petitioner's Motion for Costs* is ALLOWED.

## I. *Factual Background*

Petitioner Jean Walensky Oscar is a native and citizen of Haiti who has resided in the United States since 1984.[1] On July 30, 2008, after Petitioner attended a naturalization interview in Boston, agents from the Immigration and Customs Enforcement division of the Department of Homeland Security ("ICE") detained him pursuant to 8 U.S.C. § 1226(c).[2] On August 7, 2008, an Immigration Judge denied Petitioner a bond hearing because he had been previously convicted of an enumerated offense under § 1226(c).[3] Although this offense occurred in 1996, before § 1226(c) took effect, the Immigration Judge held that Petitioner's subsequent arrest in 2000 triggered mandatory detention.[4] The 2000 arrest occurred as a result of an outdated warrant, not criminal activity by Petitioner, and the charges were immediately dropped.[5] Despite these facts, the Immigration Judge concluded that this unrelated "release" from state custody qualified Petitioner for mandatory detention under § 1226(c).[6] The Board of Immigration Appeals ("BIA") later denied Petitioner's appeal.[7]

On October 1, 2008, this court granted Petitioner's *Petition for a Writ of Habeas Corpus,* and ordered a bond hearing.[8] The next day, Petitioner successfully petitioned a state court to revise his underlying sentence from 18 months to 364 days, thereby removing his 1996 offense from the purview of § 1226(c).[9] This court subsequently vacated its October 1 order and dismissed the case as moot.[10] Petitioner now seeks $24,867.50 in legal fees[11] and $13 in costs[12] under the Equal Access to Justice Act ("EAJA").

## II. *Discussion*

### A. *The EAJA Standard*

▮ Absent special circumstances, the EAJA authorizes attorneys' fees when:

1.  *See* Pet'r Mem. Supp. Mot. Att'y Fees & Costs 1.

2.  *See id.*

3.  *Id.*

4.  *Id.* 1–2.

5.  *Id.* 7.

6.  *Id.* 2.

7.  *Id.*

8.  *See* Order Grant Pet. Habeas Corpus 1.

9.  *See* Pet'r Mem. Supp. Mot. Att'y Fees & Costs 2.

10.  *See* Order of Dismissal 1.

11.  *See* Mot. Att'y Fees 1.

12.  *See* Mot. Costs 1.

(1) Petitioner was a "prevailing party"; and (2) the Government's position was not "substantially justified."[13] The prevailing party standard requires (1) a "material alteration of the legal relationship of the parties"; and (2) a "judicial imprimatur on the change."[14] This court granted the *Petition for Habeas Corpus* while expressly rejecting Respondent's interpretation of § 1226(c). Respondent now contends that, because Petitioner successfully requested that a state court revise his underlying sentence and effectively mooted his own case before this court, it cannot be said that Petitioner "prevailed."[15] But this court's order constituted a judicial imprimatur on a material change in the legal relationship of the parties. Petitioner sought a bond hearing (a material change), and this court granted his request (a judicial imprimatur). Although extraneous circumstances later rendered the order moot, these events do not alter the fact that Petitioner succeeded in his action before this court. Petitioner, then, is a prevailing party for the purposes of the EAJA.

▮ The EAJA also requires that the Government's position was not substantial-

ly justified. To prove that its position was substantially justified, Respondent must show that it had a "reasonable basis in both law and fact."[16] The Government has the burden of demonstrating that its prelitigation conduct as well as its litigation position meet this standard.[17] Here, Respondent establishes neither.

When Petitioner appeared for a naturalization interview, ICE agents took him into custody, using his 2000 arrest as justification for the detention. Not only did the 2000 arrest result from law enforcement error rather than criminal activity, but it also occurred eight years prior to Petitioner's detention. While § 1226(c) authorizes detention "when the alien is released," Respondent apparently read this provision to mean "any time after the alien is released." But this interpretation perverts the plain language of the statute.[18]

Moreover, Petitioner's arrest and release in 2000 were entirely unrelated to the enumerated offense which triggered deportation proceedings. Acknowledging that § 1226(c) does not apply retroactively, Respondent argued that the "when released" provision could refer to *any* re-

---

**13.** 28 U.S.C.A. § 2412(d)(1)(B) (West 2008).

**14.** *Smith v. Fitchburg Pub. Sch.*, 401 F.3d 16, 22 (1st Cir.2005) (emphasis omitted) (quoting *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't Health & Human Res.*, 532 U.S. 598, 604–05, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)).

**15.** *See* Resp't Mem. Opp'n Mot. Att'y Fees 5–6. The Supreme Court has highlighted this problem without addressing it. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 483, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) ("Whether [a party] . . . can be deemed a 'prevailing party' in the District Court, even though its judgment was mooted after being rendered but before the losing party could challenge its validity on appeal, is a question of some difficulty . . . We decline to resolve [it] . . . .").

**16.** *See Schock v. U.S.*, 254 F.3d 1, 5 (1st Cir.2001).

**17.** *Id.*

**18.** *See, e.g., Quezada–Bucio v. Ridge*, 317 F.Supp.2d 1221, 1230–31(W.D.Wash.2004) (holding § 1226(c) does not apply when alien was detained years after release); *Waffi v. Loiselle*, 527 F.Supp.2d 480, 487 (E.D.Va. 2007) (holding § 1226(c) does not apply when alien was detained over a month after release). One court, while ultimately deferring to the government's liberal interpretation of the statute, acknowledged that long delays between release and detention could create an "Orwellian result." *See Saucedo–Tellez v. Perryman*, 55 F.Supp.2d 882, 885 n. 5 (N.D.Ill.1999).

lease from state custody.[19] This interpretation is also inconsistent with the plain language of the statute, especially when placed in context. The "when released" provision immediately follows the list of enumerated offenses, indicating that the former modifies the latter. Additionally, § 1226(c) provides that the alien shall be detained upon release regardless of whether he is subsequently arrested for the "same offense," reinforcing the notion that the entire clause applies to the list of enumerated offenses immediately preceding it. Respondent's contention that the "when released" provision applies to any release from custody is an unsupported inference that contravenes clear statutory language.

■ Finally, Respondent points to the BIA's decision in *Matter of Saysana,* which adopted the same interpretation of § 1226(c), as evidence of the argument's merit.[20] But one administrative decision, whether favorable or unfavorable, is not dispositive of whether the government's position was substantially justified.[21] Moreover, several other courts directly refute the view espoused by *Saysana,*[22] making Respondent's reliance on *Saysana* inconsequential.

In sum, Petitioner's arrest in 2000 was the result of police error, occurred eight years prior to his detention, and had no relation to the underlying offense which made him eligible for removal. Individually, each of these facts could preclude the application of § 1226(c) to Petitioner, and cumulatively, they are strong evidence that Respondent's position was not substantially justified. One favorable decision will not cure these defects in Respondent's argument. Because Respondent's position, both prior to and during litigation, had no reasonable basis in law or fact, this court ALLOWS Petitioner's EAJA request for legal fees and costs.

## B. *Calculation of Fees*

■ While deserving some compensation, Petitioner is not entitled to the full $24,880.50 requested. This figure is based largely on the $225 hourly rate charged by Petitioner's counsel.[23] The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."[24] The Supreme Court has interpreted the "qualified attorneys" language to mean "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question."[25] Petitioner requests compensation for the full $225 hourly rate based on a lack of qualified attorneys in the area[26] or, in the alterna-

19. *See* Resp't Mem. Supp. Mot. Dismiss 9–10.

20. 24 I. & N. Dec. 602 (BIA 2008).

21. *See Pierce v. Underwood,* 487 U.S. 552, 569, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) ("Obviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified.").

22. *See, e.g., Thomas v. Hogan,* No. 1:08–CV–0417, 2008 WL 4793739 (M.D.Pa. Oct. 31, 2008); *Cox v. Monica,* No. 1:07–CV–0534, 2007 WL 1804335 (M.D.Pa. June 20, 2007); *Quezada–Bucio v. Ridge,* 317 F.Supp.2d 1221, 1229 (W.D.Wash.2004).

23. *See* Pet'r Mem. Supp. Mot. Att'y Fees & Costs 13.

24. § 2412(d)(2)(A).

25. *Pierce v. Underwood,* 487 U.S. 552, 572, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

26. *See* Pet'r Mem. Supp. Mot. Att'y Fees & Costs 8.

tive, compensation at an hourly rate of $167.98 based on the statutory rate adjusted for standard of living.[27]

 Petitioner's action did not require the degree of "specialized skill" contemplated under the EAJA. Throughout the litigation, Petitioner acknowledged that Respondent's argument "clashed with the plain meaning of [§ 1226(c) ]."[28] Petitioner cannot now assert that this rather straightforward argument is so complicated that only attorneys possessing specialized skill are qualified to conduct the litigation. Petitioner is entitled to a cost of living adjustment, however, and this court adopts the suggested $167.98 hourly rate, which Defendants do not contest in their opposition.[29]

Accordingly, Petitioner's *Motion for Attorney Fees and Costs* is ALLOWED to the extent that it is based on the statutory hourly rate adjusted for cost of living in Boston and DENIED insofar as it bases attorney fees on specialized skill. Petitioner is hereby awarded attorney fees and costs in the amount of $18,796.46.[30]

IT IS SO ORDERED.

---

**27.** *Id.* 15.

**28.** *Id.* 7.

**29.** Respondent does not dispute either Petitioner's entitlement to the cost of living adjustment or the rate suggested by Petitioner. Respondent does, however, contend that Petitioner should not receive attorneys' fees for work done in opposition to Respondent's *Motion to Vacate*, which this court granted. Respondent cites no case that arrives at an award for attorneys' fees only after parsing out which motions were won and lost. This court is wary of the incentives that might arise from such a system and, thus, declines to adopt it. Respondent also challenges any reimbursement of work performed by paralegals or by Attorneys Gomez and Holper, who did not represent Petitioner but simply acted as consultants. Again, Respondent offers no legal basis or even a rationale for denying fees for work delegated by attorneys during the litigation process. The court, then, rejects this argument as well.

**30.** This number is reached by substituting the $167.98 hourly rate for the $225 rate, and accepting both the rate of $50/hour for paralegals and the reported costs of $13. Attorney Kain reports 52.6 hours of her own work, which amounts to $8,835.75 and 6.5 hours of paralegal work, which amounts to $325. Attorney Doyle reports 39.3 hours of her own work, which amounts to $6,601.61, and 10.7 hours of paralegal work, which amounts to $535. Attorney Holper reports 7 hours of her own work, which amounts to $1,175.86. Attorney Gomez reports 7.8 hours of her own work, which amounts to $1,310.24.