Sebastian Melero VALDEZ, Petitioner,

v.

Ray TERRY, Warden, Respondent.

No. CV 11–0897 JP/LAM.

United States District Court,
D. New Mexico.

April 18, 2012.

Amber Lea Weeks, Olsi Vrapi, Noble & Vrapi, PA, Albuquerque, NM, for Petitioner.

Ravi Sinha, United States Attorney's Office, Las Cruces, NM, for Respondent.

### ORDER ADOPTING PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

JAMES A. PARKER, Senior District Judge.

**THIS MATTER** is before the Court on the Magistrate Judge's *Proposed Findings and Recommended Disposition (Doc. 14)* (hereinafter "PF & RD"), filed on February 2, 2012. The United States filed objections to the PF & RD on February 14, 2012 [*Doc. 15,*] and Petitioner filed objections to the PF & RD on February 16, 2012 [*Doc. 16.*] On March 1, 2012, Petitioner filed a response to the United States' objections. [*Doc. 17*] No response to Petitioner's objections has been filed and the deadline for doing so has passed. The Court has reviewed the PF & RD, the parties' respective objections to the PF & RD, and Petitioner's response to the United States' objections, and finds that the objections are without merit. Accordingly, the Court will: (1) overrule the United States' and Petitioner's objections; (2) adopt the PF & RD; (3) grant Petitioner's **Petition For Writ Of Habeas Corpus And Immediate Release From Custody (Doc. 1)**; and (4) enter a judgment dismissing this case with prejudice.

### Background

As explained in the PF & RD, § 1226(a) governs the detention of an alien pending a decision on whether the alien is to be removed from the United States, and provides that the Attorney General may release the alien on bond or conditional parole if he or she does not pose a danger to the community and is not a flight risk. 8 C.F.R. § 236.1(c)(8). Section 1226(c)(1), however, mandates detention of specified criminal aliens pending a decision on their removal without an opportunity for a bond hearing before an immigration judge, including those who are deportable for having committed offenses under § 1227(a)(2)(A)(ii).[1] Section 1226(c) states that "[t]he Attorney General shall take into custody [specific criminal aliens] . . . when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." In the PF & RD, the Magistrate Judge found that Petitioner is not subject to mandatory detention under § 1226(c)

---

1. The parties do not dispute that Petitioner is deportable under § 1227(a)(2)(A)(ii), which states that an alien is deportable if he or she "at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct."

because he was not detained immediately upon his release on probation. [*Doc. 14* at 10].

### United States' Objections

#### A. Rejection of the Holding of Matter of Rojas

The United States' first objection to the PF & RD is that the Magistrate Judge erred by declining to follow the Board of Immigration Appeals' (hereinafter "BIA") decision in *Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001), which held that Immigration and Custom Enforcement (hereinafter "ICE") does not have to detain a person immediately after release from criminal custody in order for mandatory detention under § 1226(c) to apply [*Doc. 15* at 3–13]. As the Magistrate Judge pointed out, neither this Court nor the Tenth Circuit Court of Appeals has addressed whether the mandatory detention provision of § 1226(c) should apply to an alien who was not taken into custody immediately upon release. [*Doc. 14* at 6]. In its objections, the United States contends that the Magistrate Judge's recommendation is not in line "with an ever-growing number of district courts that correctly defer to the [BIA's construction of the statute]," and that "[c]ourts nationwide have dealt with this issue and have repeatedly, though not unerringly, found that *Matter of Rojas* is entitled to *Chevron* deference." *Id.* at 1–2.

These statements are misleading in that they fail to acknowledge, as the Magistrate Judge pointed out, that the *majority* of federal district courts that have ruled on this issue have agreed that the language "when the alien is released" in § 1226(c) unambiguously means immediately after their release and have rejected the BIA's interpretation of § 1226(c) in *Matter of Rojas*. *See* [*Doc. 14* at 6–8] (citing *Louisaire v. Muller*, 758 F.Supp.2d 229, 236 (S.D.N.Y.2010) ("*Matter of Rojas*, however, is wrong as a matter of law and con-

trary to the plain language of the statute. The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) *immediately* upon their release from criminal sentences for those *same offenses*, even if they are still serving part of their sentence ... under parole, supervised release, or probation.") (citations and internal quotation marks omitted); *Khodr v. Adduci*, 697 F.Supp.2d 774, 774–75 (E.D.Mich.2010) (finding that because § 1226(c) "clearly and unambiguously requires the Attorney General to take into custody certain aliens without delay in order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c), the Court does not defer to the Board of Immigration Appeals' decision to the contrary in *Matter of Rojas*"); *Scarlett v. Dept. of Homeland Sec., ICE*, 632 F.Supp.2d 214, 219 (W.D.N.Y.2009) (holding that § 1226(c) does not apply because the petitioner was not taken into immigration custody until more than eighteen months from the time of his release from incarceration on the underlying criminal charges); *Waffi v. Loiselle*, 527 F.Supp.2d 480, 488 (E.D.Va.2007) (finding that § 1226(c) does not apply to an alien who was taken into immigration custody over a month after his release from state custody); *Quezada–Bucio v. Ridge*, 317 F.Supp.2d 1221, 1231 (W.D.Wash.2004) ("[T]he Court agrees ... that the mandatory detention statute, [§ 1226(c) ], does not apply to aliens who have been taken into immigration custody several months or several years after they have been released from state custody.") (footnote omitted); *Parfait v. Holder*, Civil No. 11–4877(DMC), 2011 WL 4829391 at *6 (D.N.J. Oct.11, 2011) (unpublished) (holding that because "taking the alien into custody more than two and one-half years after the alien is released does not fall within the command to take the alien into

custody when the alien is released, the BIA's interpretation is contrary to the plain meaning of the statute"); *Beckford v. Aviles,* Civil Action No. 10–2035(JLL), 2011 WL 3515933 at \*7–9 (D.N.J. Aug. 9, 2011) (unpublished) (rejecting reasoning of *Matter of Rojas* and finding that the phrase "when the alien is released" is unambiguous and held that an alien who was taken into immigration custody nearly three years after he was released from incarceration was not subject to mandatory detention under § 1226(c)(1)); *Keo v. Lucero,* No. 1:11cv614, 2011 WL 2746182 \*3–5 (E.D.Va. July 13, 2011) (unpublished) (holding that § 1226(c) does not apply when alien was released from incarceration eight years prior to being detained for removal proceedings); *Sylvain v. Holder,* Civil No. 11–3006(JAP), 2011 WL 2580506 at \*7 (D.N.J. June 28, 2011) (unpublished) (holding that § 1226(c) does not apply when alien was released from incarceration four years prior to being detained for removal proceedings); *Dang v. Lowe,* Civil No. 1:CV10–0446, 2010 WL 2044634 (M.D.Pa. May 20, 2010) (unpublished) (same interpretation of § 1226(c)); *Bromfield v. Clark,* No. C06–757RSM, 2007 WL 527511 at \*4–5 (W.D.Wash. Feb. 14, 2007) (unpublished); *Boonkue v. Ridge,* No. CV 04–566–PA, 2004 WL 1146525 at \*2 (D.Or. May 7, 2004) (unpublished)).

The United States' assertion that "an ever-growing number of district courts that correctly" have deferred to the BIA's construction of § 1226(c) is misleading because: (1) the number of cases that have rejected the BIA's interpretation of § 1226(c) is also growing; (2) there are published decisions rejecting the BIA's interpretation of the statute, while the cases deferring to it are only unpublished; and (3) the cases on both sides are equally recent. Moreover, as both the Magistrate Judge and the court in *Beckford* have noted, the *majority* of district courts that have ruled on the issue have rejected the

holding of *Matter of Rojas. See* [*Doc. 14* at 6] and *Beckford,* 2011 WL 3515933 at \*8 ("[M]ost District Courts considering the issue have rejected the BIA's interpretation of § 1226(c)(1) in *Matter of Rojas.*") (citations omitted).

■■■■ Nevertheless, regardless of how many district courts have followed or rejected the BIA's decision in *Matter of Rojas,* those decisions are not binding on this Court and the Court agrees with the Magistrate Judge that the mandatory detention provision in § 1226(c) does not apply to Petitioner. The Court agrees with the Magistrate Judge that § 1226(c) is not ambiguous and the word "when" in the context of release from custody means immediately upon release. As the Magistrate Judge explained, if the term "when the alien is released" means that the Attorney General shall take into custody any aliens who have committed offenses enumerated within § 1226(c)(1)(A)-(D) without regard to the timing of that alien's release from custody, then the phrase "when the alien is released" becomes meaningless surplusage. *See* [*Doc. 14* at 9]. The Court finds that this interpretation of § 1226(c) comports with the Congressional intent behind the statute to prevent problems locating criminal aliens for deportation after their release, because, if those aliens are immediately detained, they pose no flight risk and the intent behind mandatory detention is attained. *See* [*Doc. 15* at 4–5] (citing *Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003)). This interpretation further comports with the Congressional intent to detain the most dangerous criminals because their immediate detention provides more protection to the community. *See Demore,* 538 U.S. at 531, 123 S.Ct. 1708 ("[T]he justification for 8 U.S.C. § 1226(c) is based upon the Government's concerns over the risks of flight and danger to the community.") More-

over, mandatory detention is a harsh penalty that should be strictly and narrowly enforced. *See Zadvydas v. Davis,* 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (stating that "[a] statute permitting indefinite detention of an alien [raises] serious constitutional problem[s]" and, therefore, detention must comport with the Due Process Clause; "government detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections ... or, in certain special and narrow nonpunitive circumstances, ... where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint") (citations and internal quotation marks omitted).

The Court finds the United States' contention that immediate mandatory detention under § 1226(c) might be impractical or logistically infeasible to be without merit. The United States relies on *United States v. Montalvo–Murillo,* 495 U.S. 711, 720, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990) for this contention; however, the holding in *Montalvo–Murillo* is distinguishable. In that case, the United States Supreme Court overturned a district court's decision to release a suspect because his detention hearing was not held at his first appearance as was required by statute but was, instead, held eleven (11) days after his first appearance. *Id.* at 715–18, 110 S.Ct. 2072. The United States Supreme Court held that the release of detainees when the Government fails to comply with a statutory command that a detention hearing be held immediately is too harsh a sanction. 495 U.S. at 718, 110 S.Ct. 2072. Here, however, the Court is not mandating Petitioner's release; instead, the Court is merely ordering that Petitioner be given a bond hearing so an immigration judge can determine whether he is a threat to the community or a flight risk. At that hearing, the Government will still be allowed to make its arguments for detention based on flight risk and danger. A further distinction between this case and *Montalvo–Murillo* is that the delay in *Montalvo–Murillo* was eleven (11) days, whereas here Petitioner was detained more than a year after the conviction that made him deportable under § 1227(a)(2)(A)(ii). For these reasons, the Court rejects the United State's first objection.

## B. Failure to Follow *Saysana v. Gillen*

■ The United States' second objection is that the Magistrate Judge erred by failing to follow the reasoning in *Saysana v. Gillen,* 590 F.3d 7 (1st Cir.2009) in her finding that Petitioner's arrest for his second crime involving moral turpitude was insufficient to trigger mandatory detention under § 1226(c). [*Doc. 15* at 13–15]. The United States claims that *Saysana* is "the first and only circuit court to address the meaning of 8 U.S.C. § 1226(c)'s use of the term 'when the alien is released,' [and] the First Circuit rejected the position—adopted by the Magistrate Judge—that an arrest cannot trigger mandatory detention." [*Doc. 15* at 2]. The Court notes that the United States failed to cite to this case in its briefs before the Magistrate Judge, and theories raised for the first time in objections are deemed waived. *See United States v. Garfinkle,* 261 F.3d 1030, 1031 (10th Cir.2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.") (citing *Marshall v. Chater,* 75 F.3d 1421, 1426–27 (10th Cir.1996) (same as to issues raised for the first time); *see also Paterson–Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990–91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review ... of an argument never seasonably raised before the [judge].") (citation

omitted)). Furthermore, the holding of *Saysana* is not binding on this Court.

Nevertheless, the Court finds that the United States' reliance on *Saysana* is unavailing for several reasons. First, the reasoning in *Saysana* is not contrary to the Magistrate Judge's recommendation. In fact, the reasoning and the statutory construction of § 1226(c) is identical to that of the Magistrate Judge. For example, the court in *Saysana* states:

> In our view, a natural reading of the provision from top to bottom makes clear that the congressional requirement of mandatory detention is addressed to the situation of an alien who is released from custody for one of the enumerated offenses. . . .
>
> The 'when released' provision immediately follows the list of enumerated offenses, indicating that the former modifies the latter. Additionally, § 1226(c) provides that the alien shall be detained upon release regardless of whether he is subsequently arrested for the 'same offense,' reinforcing the notion that the entire clause applies to the list of enumerated offenses immediately preceding it.

*Saysana*, 590 F.3d at 13–14. The Magistrate Judge similarly found that the term "when released" is not ambiguous and means that "an alien shall be detained upon release." *Id.* at 14.

Second, the Court in *Saysana* did not consider whether § 1226(c) applies to aliens who are not detained immediately upon their release, as stated by the United States. [*Doc. 15* at 15–16]. Instead, the *Saysana* court considered whether the mandatory detention provision of § 1226(c) applies only when an alien is released from custody for one of the offenses listed in § 1226(c)(1)(A)-(D), or if it applies when an inadmissible or deportable alien is released from custody for any offense. 590 F.3d at 11. Therefore, the First Circuit's discus-

sion regarding the timing of an alien's release is dicta as it was not the holding in that case. Moreover, the First Circuit's statements that "when released" can mean release from preconviction custody were in regards to aliens who are subject to mandatory detention under § 1226(c)(1)(A) and (D), not (B) or (C), so these statements are inapplicable here because Petitioner is subject to mandatory detention under § 1226(c)(1)(B). This distinction is important because under § 1226(c)(1)(A) or (D), aliens can be subject to mandatory detention since they are inadmissible under 8 U.S.C. §§ 1182(a)(2) or 1182(a)(3)(B), where a conviction is not a predicate to their inadmissibility. *Saysana*, 590 F.3d at 14. For example, an alien can be subject to mandatory detention under § 1226(c)(1)(A) if "the consular officer or the Attorney General knows or has reason to believe ... [that he or she] is or has been an illicit trafficker in any controlled substance." 8 U.S.C. § 1182(a)(2)(C). Persons subject to mandatory detention under this section, therefore, do not have to be convicted of a certain crime for § 1226(c) to apply. Petitioner, however, is subject to mandatory detention under § 1226(c)(1)(B) for committing offenses under § 1227(a)(2)(A)(ii), which requires *convictions* for two or more crimes involving moral turpitude. Thus, the Magistrate Judge did not err in finding (1) that Petitioner was not subject to mandatory detention following his arrest for his second crime of moral turpitude because he had not yet been convicted of that crime, and (2) that a conviction was a predicate to Petitioner being deportable under § 1226(c)(1)(B). Contrary to the United States' contention, the Magistrate Judge did not find "that an arrest cannot trigger mandatory detention;" the Magistrate Judge, instead, found that *Petitioner's* arrest—without a conviction that would make him deportable under

§ 1227(a)(2)(A)(ii)—did not trigger mandatory detention *for Petitioner.* Accordingly, the First Circuit's discussion about the meaning of "when released"—that "a conviction is not always a predicate to inadmissibility or removability"—is inapplicable to this case because that discussion applies to § 1227(c)(1)(A) and (D) only. *Saysana,* 590 F.3d at 14.

Third, the United States' reliance on *Saysana* is unavailing because, in *Saysana,* the United States asserted the same argument they make here that § 1226(c) is ambiguous, and the First Circuit rejected the United States' argument and found that the statute was not ambiguous. *Saysana,* 590 F.3d at 14–15 ("We believe that [the United States'] reading of the statutory language is a strained one . . . [because] the plain language of the statute does not render the term 'when released' meaningless as applied to [§ 1226(c)(1)(A) and (D)].... Absent a clear direction in the text to read multiple uses of the same term to carry different meanings, we shall not do so.").

Finally, the Court notes that the Government contends that the Magistrate Judge erred by failing to consider the BIA's decisions *In re West,* 22 I. & N. Dec. 1405, 1408–10 (BIA 2000) and *Matter of Arreola,* 25 I. & N. Dec. 267, 271 (BIA 2010). The Court notes that the United States did not cite to Matter of Arreola in its briefs before the Magistrate Judge, and theories raised for the first time in objections are deemed waived. *See Garfinkle,* 261 F.3d at 1031 ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.") (citing *Marshall v. Chater,* 75 F.3d 1421, 1426–27 (10th Cir.1996)). In addition, the holdings in these cases are inapplicable because they do not directly address the issue before the Court. *See In re West,* 22 I. & N. Dec. 1405, 1408–10 (BIA 2000) (finding that the petitioner's release from preconviction custody prior to expiration of the Transition Rules on October 8, 1998, did not constitute "release" so that the mandatory detention provision (which was not applicable until after October 8, 1998) applied to petitioner) and *Matter of Arreola,* 25 I. & N. Dec. 267, 271 (BIA 2010) (holding that "release" under § 1226(c) must be tied to the basis for detention under § 1226(c)(1)(A)-(D)). Moreover, to the extent the findings in these cases conflict with the Court's holding, the Court is not bound by their reasoning or holdings and declines to follow those holdings.

### C. "Absurd Results"

The United States next contends that, if criminal aliens must be detained immediately upon their release from preconviction confinement for the mandatory detention section to apply, but ICE cannot detain an individual who is deportable under § 1226(c)(1)(B)-(C) until they are convicted of the underlying crime, then "it is impossible for ICE to actually detain any alien arrested, but not immediately convicted of a crime referenced in § 1226(c)(1)(B)-(C), because the 'window' for detaining those aliens—immediately after their release from pre-trial custody—will have lapsed long before a final conviction is attained." [*Doc. 15* at 16]. The United States argues that this reading of the statute "achieves absurd results." The Court agrees that this reading of the statute would achieve absurd results; however, this is *not* the Magistrate Judge's, nor the undersigned's, reading of the statute. As the Magistrate Judge explained: " § 1226(c) did not apply to Petitioner until his second conviction because § 1226(c) applies to Petitioner by virtue of § 1227(a)(2)(A)(ii), which requires that an alien be '*convicted* of two or more crimes involving moral turpitude' (emphasis added)." [*Doc. 14* at 5]. As the Magistrate Judge also explained, "the triggering

event for mandatory detention to apply was Petitioner's July 2010 conviction, and his release on probation following that conviction satisfies the 'when released' requirement of § 1226(c)." *Id.* Of course the Court does not expect ICE to detain individuals who are subject to mandatory detention under § 1226(c) by virtue of being convicted of a crime *before* that conviction. While the United States contends that the First Circuit in *Saysana* held that the "when released" provision applies to aliens who are released from preconviction confinement, as explained above, the United States fails to recognize that: (1) this was not the holding of *Saysana;* and (2) the discussion in *Saysana* on this issue was with regards to aliens who are subject to mandatory detention under § 1226(c)(1)(A) and (D) because they are inadmissable under 8 U.S.C. §§ 1182(a)(2) or 1182(a)(3)(B), where a conviction is not a predicate to inadmissibility. *Saysana,* 590 F.3d at 14. Here, however, since Petitioner is subject to mandatory detention based on the conviction of a crime, the Magistrate Judge correctly found that the "when released" language must apply to his release from custody *after* that conviction. For these reasons, the Court rejects the United States' objections.

### Petitioner's Objection

Petitioner objects to the Magistrate Judge's finding that Petitioner's release on probation, following his conviction for the second crime of moral turpitude, triggered the mandatory detention provision in § 1226(c). [*Doc. 16* at 1–2]. Petitioner contends that, since the statute uses the term "released," physical detention prior to the release is required, and because Petitioner was not detained after his conviction, he was not "released" on probation. *Id.* at 2. Petitioner appears to contend that "released" requires incarceration prior to release. *See id.* ("[Petitioner] was not released from incarceration onto probation as the statute contemplates. As

a result, no release occurred in any of these events after his conviction."). The Court rejects this objection. Nowhere in § 1226 does Congress state that an alien must be released from physical custody for the mandatory detention provision to apply. Moreover, even though Petitioner was released prior to his conviction, that does not mean that he was free of the Court's custody or control. *See, e.g., Schwartz v. N.M. Corr. Dept. Probation and Parole,* 384 Fed.Appx. 726, 731 (10th Cir.2010) (unpublished) (explaining that a habeas petitioner who had been placed on parole was still "in custody" because he is subject to restraints on his liberty) (citation omitted); *United States v. Draper,* 996 F.2d 982, 987 (9th Cir.1993) (explaining that "absconding from pretrial release amounts to escape from custody under the Sentencing Guidelines").

Petitioner cites several cases in support of his argument that "released" requires physical confinement under this statute. [*Doc. 16* at 3–4] (citing *Louisaire v. Muller,* 758 F.Supp.2d 229, 236 (S.D.N.Y.2010); *Alikhani v. Fasano,* 70 F.Supp.2d 1124, 1130 (S.D.Cal.1999); *Burns v. Cicchi,* 702 F.Supp.2d 281, 288 (D.N.J.2010); *Beckford v. Aviles,* Civil Action No. 10–2035(JLL), 2011 WL 3515933, *7 (D.N.J. Aug. 9, 2011) (unpublished); *Saysana v. Gillen,* 590 F.3d 7, 10 (1st Cir.2009); *Quezada–Bucio v. Ridge,* 317 F.Supp.2d 1221, 1230 (W.D.Wash.2004)).

The Court notes that Petitioner failed to cite any of these cases in support of this argument in its briefs before the Magistrate Judge, and theories raised for the first time in objections are deemed waived. *See Garfinkle,* 261 F.3d at 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.") (citing *Marshall v. Chater,* 75 F.3d 1421, 1426–27 (10th Cir.1996)).

In addition, the Court finds that, while these cases include statements that may *imply* that mandatory detention requires release from physical incarceration, such statements are dicta because none of these cases directly decided the issue of whether "released" in § 1226(c) required physical confinement. *See Louisaire,* 758 F.Supp.2d at 238 (holding that for § 1226(c)(1) to apply, the alien must be released from "criminal sentences" related to an offense enumerated in § 1226(c)(1)(A)(D), but does not address whether physical custody is a requirement for the statute to apply); *Alikhani,* 70 F.Supp.2d at 1130 (holding that § 1226(c) does not apply retroactively to persons who were released from custody prior to the effective date of the mandatory detention provision, and does not address whether physical custody is a requirement for the statute to apply); *Burns,* 702 F.Supp.2d at 288 (holding that mandatory detention provision does not apply because the petitioner was released from incarceration for an enumerated offense prior to the effective date of the statute, and does not address whether physical custody is a requirement for the statute to apply); *Beckford,* 2011 WL 3515933 at *7 (holding that § 1226(c)(1) does not apply because the petitioner was not taken into custody immediately upon his release from incarceration, but does not address whether physical custody is a requirement for the statute to apply); *Saysana,* 590 F.3d at 10 (holding that § 1226(c) applies only when an alien is released from custody for one of the offenses listed in § 1226(c)(1)(A)-(D), and does not address whether physical custody is a requirement for the statute to apply); *Quezada–Bucio,* 317 F.Supp.2d at 1230 (holding that § 1226(c) does not apply to aliens who were not taken into immigration custody immediately upon their release from custody, but does not address whether physical custody is a requirement for the statute to apply).

Moreover, the holdings of these cases are not binding on this Court, especially where the facts of this case regarding the sequence of Petitioner's arrest, release pre-conviction, conviction, and sentencing to probation. In other words, the event that triggered mandatory detention (Petitioner's conviction for an enumerated offense) occurred after his release from pre-conviction incarceration but before his sentence of probation.

Finally, the Court finds that Petitioner should not receive a windfall because he was released pre-conviction and was never incarcerated post-conviction when his conviction triggered mandatory detention. The only reasonable conclusion in this situation is to allow the United States to detain Petitioner at the time the mandatory detention statute is triggered, *i.e.,* at sentencing, but not a year later. For these reasons, the Court overrules this objection.

**IT IS THEREFORE ORDERED,** for the reasons stated above, that the United States' objections to the PF & RD [*Doc. 15*] and Petitioner's objections to the PF & RD [*Doc. 17*] are **OVERRULED.**

**IT IS FURTHER ORDERED** that the Magistrate Judge's *Proposed Findings and Recommended Disposition (Doc. 14)* are **ADOPTED** by the Court.

**IT IS FURTHER ORDERED** that Petitioner's *Petition For Writ Of Habeas Corpus And Immediate Release From Custody (Doc. 1)* is **GRANTED** and Petitioner should be provided an individualized bond hearing pursuant to 8 U.S.C. § 1226(a) **within 21 days of entry of this Order;**

**IT IS FURTHER ORDERED** that if Petitioner is not given a hearing within that time period, Petitioner be released pending issuance of a removal order.

**IT IS FURTHER ORDERED** that this case be **DISMISSED WITH PREJU-**

DICE and that a final judgment be entered concurrently with this order.

**IT IS SO ORDERED.**

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

### PROPOSED FINDINGS

LOURDES A. MARTÍNEZ, United States Magistrate Judge.

**THIS MATTER** is before the Court on Petitioner's *Petition For Writ Of Habeas Corpus And Immediate Release From Custody (Doc. 1)* (hereinafter "Petition"), filed October 6, 2011. Respondent filed a response on November 14, 2011 *[Doc. 9 ]*, and an amended response on November 15, 2011 *[Doc. 10 ]*.[2] Petitioner filed a reply *[Doc. 11]* on November 23, 2011, and a notice of recently-decided authority on December 12, 2011 *[Doc. 13 ]*. Senior United States District Judge James A. Parker referred the claims raised in Petitioner's Petition *[Doc. 1 ]* to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. *[Doc. 3 ]*. Having considered the parties' submissions, relevant law, and the record in this case, the undersigned, for the reasons set forth below, recommends that Petitioner's *Petition For Writ Of Habeas Corpus And Immediate Release From Custody (Doc. 1)* be **GRANTED.**

The Court has jurisdiction of this § 2241 petition because Petitioner was confined in New Mexico at the time he filed the petition. *See* Petition *[Doc. 1 ]* at 3; *Rumsfeld v. Padilla,* 542 U.S. 426, 443, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004) ("The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies only in one district: the district of confinement."); *United States v. Scott,* 803 F.2d 1095, 1096 (10th Cir.1986) ("A § 2241 petition for a writ of habeas corpus must be addressed to the federal district court in the district where the prisoner is confined.").

### *Factual and Procedural Background*

The following facts are uncontested by the parties. Petitioner is a citizen of Mexico who was granted lawful permanent resident status on March 16, 1991. *[Doc. 1* at 3]. On October 14, 1994, Petitioner was convicted of illegal investment contrary to Texas state law, and was sentenced to ten years of confinement as a result of that conviction. *Id.* at 5. Petitioner alleges that

---

1.  Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed.R.Civ.P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.

2.  It appears that the amended response is identical to the original response, but is a better quality copy. The Court cites herein to the amended response. In his response, Respondent asks the Court to dismiss Attorney General Eric Holder and Adrian Macias from this action on the basis that they are improperly named as Respondents. *[Doc. 10* at 3 and 14]. On October 13, 2011, the Court entered an order directing the Clerk to change the docket to reflect that Ray Terry, Warden of the detention facility where Petitioner is being held, is the properly-named sole Respondent in this proceeding, and ordered service only on Respondent Terry. *[Doc. 4 ]*. Respondents Holder and Macias were terminated from the docket pursuant to that order, and Respondent's request is, therefore, moot.

he served ten years of supervised probation, and was not confined, for that conviction. *Id.* On July 21, 2010, Petitioner was convicted of two counts of receiving and transferring a stolen vehicle contrary to New Mexico law, and was sentenced to three years of supervised probation. *Id.* Petitioner was not confined following the July 21, 2010 conviction. *Id.* On September 17, 2011, Petitioner was arrested and taken into Immigration and Custom Enforcement (hereinafter "ICE") custody. This arrest occurred more than a year after Petitioner's conviction and sentence. *Id.* He is currently being held at the Otero County Processing Center. *Id.* at 3 and 5. Petitioner is being detained under the provisions of 8 U.S.C. § 1226(c), which ICE alleges subjects Petitioner to mandatory detention. *Id.* at 3 and 5–6.

Petitioner contends that his mandatory detention is unlawful for two reasons. First, Petitioner contends that the mandatory detention provision of § 1226(c) does not apply to him because he was only in custody for a short period of time following his arrest, and was not taken into custody following either of his convictions. [*Doc. 1* at 4 and 6–8]. Second, Petitioner contends that the mandatory detention provision of § 1226(c) does not apply to him because he was taken into ICE custody more than a year after his release from pre-conviction custody, and Petitioner contends that § 1226(c) applies only to persons taken into custody immediately after their release. *Id.* at 4 and 8–9. Petitioner notes that there is a Bureau of Immigration Appeals (hereinafter "BIA") decision holding that pre-conviction detention is sufficient to trigger mandatory detention under § 1226(c) (*Matter of Kotliar,* 24 I. & N. Dec. 124 (BIA 2007)), and a BIA decision holding that ICE does not have to detain a person immediately after release from criminal custody for mandatory detention under § 1226(c) to apply (*Matter of Rojas,* 23 I. & N. Dec. 117 (BIA 2001)). [*Doc. 1*

at 4 and 7–8]. Petitioner contends, however, that these cases are not entitled to deference by this Court. *Id.* at 7–9. Petitioner, therefore, asks the Court to issue an order finding that the mandatory detention provision of § 1226(c) does not apply to him and to order the Executive Office for Immigration Review to set a bond hearing under § 1226(a) within a set time period. [*Doc. 11* at 12] and [*Doc. 1* at 1 and 10]. In response, Respondent contends that ICE has lawfully detained Petitioner pursuant to § 1226(c) and the Court should defer to the BIA decisions interpreting the statute as requiring mandatory detention under these circumstances. [*Doc. 10* at 2–14].

### Analysis

Section 1226(a) governs the detention of an alien pending a decision on whether the alien is to be removed from the United States, and provides that the Attorney General may release the alien on bond or conditional parole if he or she does not pose a danger to the community and is not a flight risk. 8 C.F.R. § 236.1(c)(8). Section 1226(c)(1), however, mandates detention of specified criminal aliens, including those who are deportable for having committed offenses under § 1227(a)(2)(A)(ii), without an opportunity for a bond hearing before an immigration judge. The United States contends that Petitioner is deportable for having committed offenses under § 1227(a)(2)(A)(ii), which states that an alien is deportable if he or she "at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." [*Doc. 10* at 1]. Petitioner does not contest this assertion.

Section 1226(c) mandates detention of specified criminal aliens "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to

whether the alien may be arrested or imprisoned again for the same offense." While there are exceptions to this mandatory detention provision in § 1226(c)(2), the parties do not contend that those exceptions apply to Petitioner. *See* [*Doc. 10* at 3]. In *Matter of Kotliar*, the BIA held that release from pre-conviction detention was sufficient to satisfy the "when released" requirement when mandatory detention is triggered under § 1226(c) (24 I. & N. Dec. at 125), and in *Matter of Rojas*, the BIA held that an alien was subject to mandatory detention under § 1226(c), even though he was not immediately taken into custody by immigration officials when released from incarceration (23 I. & N. Dec. at 127) (alien had been released from incarceration two days earlier).

The Court first addresses Petitioner's contention that § 1226(c) does not apply to him because he was only in custody following his arrests, and was not placed into custody following his convictions. Petitioner contends that his detention prior to his convictions does not satisfy the "when released" requirement of § 1226(c) because that provision is not triggered until there is a conviction. The Court agrees that § 1226(c) did not apply to Petitioner until his second conviction because § 1226(c) applies to Petitioner by virtue of § 1227(a)(2)(A)(ii), which requires that an alien be "*convicted* of two or more crimes involving moral turpitude" (emphasis added). However, § 1226(c) explicitly states that, for specified criminal aliens, mandatory detention is required "when the alien is released, *without regard to whether the alien is released on parole, supervised release, or probation* . . ." (emphasis added). Therefore, the triggering event for mandatory detention to apply was Petitioner's July 2010 conviction, and his release on probation following that conviction satisfies the "when released" requirement of § 1226(c). The Court finds that, to the extent *Matter of Kotliar* holds that an

alien is subject to mandatory detention under § 1226(c) based on release from custody from an arrest preceding a conviction, this holding is contrary to the plain language of § 1227(a)(2)(A)(ii) that an alien is not deportable until he or she is *convicted* of two or more crimes involving moral turpitude. The Court, therefore, finds that Petitioner is not subject to mandatory detention under § 1226(c) based on his release from pre-conviction custody; however, Petitioner may be subject to mandatory detention based on his release on probation following his July 2010 conviction, if the other requirements of § 1226(c) are met.

▮ Even though the Court finds that Petitioner may be subject to mandatory detention under § 1226(c) based on his release on probation following his July 2010 conviction, the Court next addresses Petitioner's contention that he is not subject to mandatory detention under § 1226(c) because he was not *immediately* detained when he was released from custody, but instead was detained more than a year after his release from custody. Petitioner contends that the Court need not defer to the BIA's decision in *Matter of Rojas*, which holds to the contrary. In determining immigration laws, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 447–48, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (quoting *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Under *Chevron*, the Court must first determine whether "Congress has directly spoken to the precise question at issue," and, if it has, the Court "must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842–43,

104 S.Ct. 2778 (footnote omitted). If Congress has been silent or used language that is ambiguous, then an agency's interpretation of the statute is given controlling weight unless it is arbitrary, capricious or manifestly contrary to the statute. *Id.* at 843–44, 104 S.Ct. 2778 (footnote omitted). Deference is appropriate where "Congress delegate[s] rule making power to an agency and thereby [seeks] to rely on agency expertise in the formation of substantive policy." *Jurado–Gutierrez v. Greene,* 190 F.3d 1135, 1148 (10th Cir.1999) (citation and internal quotation marks omitted).

While neither this Court nor the Tenth Circuit Court of Appeals has addressed whether the mandatory detention provision of § 1226(c) should apply to an alien who was not taken into custody immediately upon release, most federal district courts that have ruled on this issue have agreed that "when the alien is released" unambiguously means immediately after release from custody and have rejected the BIA's interpretation of § 1226(c). *See Louisaire v. Muller,* 758 F.Supp.2d 229, 236 (S.D.N.Y.2010) ("*Matter of Rojas,* however, is wrong as a matter of law and contrary to the plain language of the statute. The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) *immediately* upon their release from criminal sentences for those *same offenses,* even if they are still serving part of their sentence … under parole, supervised release, or probation.") (citations and internal quotation marks omitted); *Khodr v. Adduci,* 697 F.Supp.2d 774, 774–75 (E.D.Mich.2010) (finding that because § 1226(c) "clearly and unambiguously requires the Attorney General to take into custody certain aliens without delay in order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c), the Court does not defer to the Board of Immigration Appeals' decision to the contrary in *Matter of Rojas* ");

*Scarlett v. Dept. of Homeland Sec., ICE,* 632 F.Supp.2d 214, 219 (W.D.N.Y.2009) (holding that § 1226(c) does not apply because the petitioner was not taken into immigration custody until more than eighteen months from the time of his release from incarceration on the underlying criminal charges); *Waffi v. Loiselle,* 527 F.Supp.2d 480, 488 (E.D.Va.2007) (finding that § 1226(c) does not apply to an alien who was taken into immigration custody over a month after his release from state custody); *Quezada–Bucio v. Ridge,* 317 F.Supp.2d 1221, 1231 (W.D.Wash.2004) ("[T]he Court agrees … that the mandatory detention statute, [§ 1226(c) ], does not apply to aliens who have been taken into immigration custody several months or several years after they have been released from state custody.") (footnote omitted). *Cf. Aguilar v. Lewis,* 50 F.Supp.2d 539, 544 (E.D.Va.1999); *Alwaday v. Beebe,* 43 F.Supp.2d 1130, 1133 (D.Or.1999); *Pastor–Camarena v. Smith,* 977 F.Supp. 1415, 1416–18 (W.D.Wash. 1997) (construing IIRIRA § 303(b)(3)(A), which "is a transitional rule that temporarily suspend[ed] operation of … § 1226(c)(1)"); *Parfait v. Holder,* Civil No. 11–4877(DMC), 2011 WL 4829391 at *6 (D.N.J. Oct. 11, 2011) (unpublished) (holding that because "taking the alien into custody more than two and one-half years after the alien is released does not fall within the command to take the alien into custody when the alien is released, the BIA's interpretation is contrary to the plain meaning of the statute"); *Beckford v. Aviles,* Civil Action No. 10–2035(JLL), 2011 WL 3515933 at *7–9 (D.N.J. Aug. 9, 2011) (unpublished) (rejecting reasoning of *Matter of Rojas* and finding that the phrase "when the alien is released" is unambiguous and held that an alien who was taken into immigration custody nearly three years after he was released from incarceration was not subject to mandato-

ry detention under § 1226(c)(1)); *Keo v. Lucero*, No. 1:11cv614, 2011 WL 2746182 *3–5 (E.D.Va. July 13, 2011) (unpublished) (holding that § 1226(c) does not apply when alien was released from incarceration eight years prior to being detained for removal proceedings); *Sylvain v. Holder*, Civil No. 11–3006(JAP), 2011 WL 2580506 at *7 (D.N.J. June 28, 2011) (unpublished) (holding that § 1226(c) does not apply when alien was released from incarceration four years prior to being detained for removal proceedings); *Dang v. Lowe*, Civil No. 1:CV–10–0446, 2010 WL 2044634 (M.D.Pa. May 20, 2010) (unpublished) (same interpretation of § 1226(c)); *Bromfield v. Clark*, No. C06–757RSM, 2007 WL 527511 at *4–5 (W.D.Wash. Feb. 14, 2007) (unpublished); *Boonkue v. Ridge*, No. CV 04–566–PA, 2004 WL 1146525 at *2 (D.Or. May 7, 2004) (unpublished).

The Court finds the reasoning of these decisions to be persuasive. As stated in *Quezada–Bucio*, "if Congress had intended for mandatory detention to apply to aliens at any time after they were released, it easily could have used the language '*after* the alien is released,' 'regardless of when the alien is released,' or other words to that effect. Instead, Congress chose the word 'when,' which connotes a much different meaning." 317 F.Supp.2d at 1230. The Court agrees that the word "when" in the context of release from custody means immediately upon release. For example, when a court orders that a defendant shall serve a term of supervised release *when* the defendant is released from incarceration, the court does not mean that supervised release could start at any time after the defendant was released—it means that the supervised release begins at the time of the release from incarceration. As explained by the court in *Waffi*, "[t]he term 'when' includes the characteristic of 'immediacy,' referring in its primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has

ceased or begun." 527 F.Supp.2d at 488 (citing 20 The Oxford English Dictionary 209 (2d ed.1989), and The American Heritage Dictionary of the English Language (4th ed.2000)). The Court agrees and finds that Congress was not ambiguous when it wrote that an alien is subject to mandatory detention "when the alien is released," and the clause "when the alien is released" means immediately after release and not "at any time after release."

■ Other federal district courts, on the other hand, in unpublished decisions, have held that the clause "when the alien is released" is ambiguous, and have given the BIA's decision in *Matter of Rojas* deference under the *Chevron* rationale. See *Hernandez v. Sabol*, 823 F.Supp.2d 266, 270–71 (M.D.Pa.2011) (unpublished); *Diaz v. Muller*, Civil Action No. 11–4029(SRC), 2011 WL 3422856 at *2–3 (D.N.J. Aug. 4, 2011) (unpublished); *Gomez v. Napolitano*, No. 11 Civ. 1350(JSR), 2011 WL 2224768 at *3 (S.D.N.Y. May 31, 2011) (unpublished); *Sulayao v. Shanahan*, No. 09 Civ. 7347(PKC), 2009 WL 3003188 at *4–6 (S.D.N.Y. Sept. 15, 2009) (unpublished); *Serrano v. Estrada*, No. 3–01–CV–1916–M, 2002 WL 485699 at *3 (N.D.Tex. Mar. 6, 2002) (unpublished). The Court, however, is not bound by any of these decisions and respectfully finds that the reasoning of these cases is not persuasive. Statutory language should not be construed in a way that renders a term surplusage. *McCloy v. U.S. Dept. of Agriculture*, 351 F.3d 447, 451 (10th Cir.2003) ("Under a long-standing canon of statutory interpretation, one should avoid construing a statute so as to render statutory language superfluous.") (citation omitted). If the term "when the alien is released" means that the Attorney General shall take into custody any aliens who have committed offenses enumerated within § 1226(c)(1)(A)-(D) without regard to the timing of that alien's release from

custody, then the phrase "when the alien is released" becomes surplusage. Moreover, the reasons that justify § 1226(c) detention are "based upon the Government's concerns over the risks of flight and danger to the community" (*Demore v. Kim*, 538 U.S. 510, 531, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (Kennedy, J., concurring)), and ICE can determine whether Petitioner poses a risk of flight or danger to the community through a bond hearing. In other words, by recommending that this motion be granted, the Court is not recommending that Petitioner be released; instead, the Court is recommending that Petitioner be given a bond hearing so an immigration judge can determine whether he is a threat to the community or a flight risk, thus addressing the Congressional intent behind the statute. For these reasons, the Court finds that § 1226(c) does not apply to Petitioner because he was not detained immediately upon release from custody.

For the reasons set forth above, the Court recommends that Petitioner should be provided an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). The Court further recommends that this hearing be provided to Petitioner **within 21 days** of these proposed findings being adopted by the Court. If Petitioner is not given a hearing within that time period, the Court recommends that he be released pending issuance of a removal order.

### RECOMMENDED DISPOSITION

For the foregoing reasons, the Court recommends that Petitioner's *Petition For Writ Of Habeas Corpus And Immediate Release From Custody (Doc. 1)* be **GRANTED** as set forth above.