Nagibullah NABI, Petitioner,

v.

Ray TERRY, Warden of Otero County Processing Center, in his official capacity, Adrian Macias, El Paso Field Office Director, Immigration and Customs Enforcement, Eric H. Holder, Jr., U.S. Attorney General in their official capacity, Respondents.

No. CV 12–0259 MV/LAM.

United States District Court,
D. New Mexico.

Oct. 29, 2012.

Amber Lea Weeks, Noble & Vrapi, PA, Albuquerque, NM, for Petitioner.

---

### ORDER ADOPTING PROPOSED FINDINGS AND RECOM-MENDED DISPOSITION

MARTHA VAZQUEZ, District Judge.

**THIS MATTER** is before the Court on Petitioner's *Petition For Writ Of Habeas Corpus And Immediate Release From Custody* ("Petition") [Doc. 1], the government's Notice of Supplemental Authority [Doc. 15], and the Magistrate Judge's *Proposed Findings and Recommended Disposition* [Doc. 20] ("PF & RD"), filed on August 1, 2012. The United States filed objections to the PF & RD on September 14, 2012 [Doc. 23],[1] Petitioner filed a response to the government's objections on September 28, 2012 [Doc. 24], and the government filed a reply in support of its objections on October 15, 2012 [Doc. 27].[2] Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a *de novo* review of those portions of the PF & RD to which the government objects, and finds that the objections are without merit. Accordingly, the Court will: (1) overrule the government's objections; (2) adopt the PF & RD; (3) grant the Petition; (4) grant the government's request that the Court consider supplemental authority, and (5) enter a judgment dismissing this case with prejudice.

### BACKGROUND

As explained in the PF & RD, Section 236 of the Immigration and Nationality Act governs the detention of an alien pending a decision on whether the alien is to be removed from the United States, and provides that the Attorney General may re-

---

1. On August 16, 2012, the Government filed an unopposed motion for an extension of time to file its objections [Doc. 21], which was granted by the Court on August 17, 2012 [Doc. 22]. The government's objections, therefore, are timely.

2. Although reply briefs in support of objections are not contemplated by Fed.R.Civ.P. 72(b), which allows for a response to objections, the Court will consider the government's reply.

lease the alien on bond or conditional parole if he or she does not pose a danger to the community and is not a flight risk. 8 C.F.R. § 236.1(c)(8). Under 8 U.S.C. Section 1226(c)(1), however, detention of specified criminal aliens, including individuals who are deportable for having committed offenses under 8 U.S.C. 1227(a)(2)(A)(iii), is mandatory pending a decision on their removal, without an opportunity for a bond hearing before an immigration judge.[3] Specifically, Section 1226(c) provides that "[t]he Attorney General shall take into custody [aliens who have either committed or have been convicted of certain offenses] ... when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c). In the PF & RD, the Magistrate Judge found that Petitioner is not subject to mandatory detention under Section 1226(c) because he was not detained immediately upon his release on probation. Doc. 20 at 8–18.[4]

## THE GOVERNMENT'S OBJECTIONS

### I. Rejection of the Holding in *Matter of Rojas*

The government's first objection to the PF & RD is that the Magistrate Judge

erred by declining to follow the Board of Immigration Appeals' ("BIA") decision in *Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001), which held that Immigration and Custom Enforcement ("ICE") does not have to detain a person immediately after release from criminal custody in order for mandatory detention under Section 1226(c) to apply. Doc. 23 at 3–17. Specifically, the government contends that the Magistrate Judge improperly found that the term "when the alien is released," as used in Section 1226(c), is unambiguous, and that this term, in fact, is ambiguous. According to the government, the *Rojas* decision should be given controlling weight, as it is not arbitrary, capricious or contrary to statute, and reasonably interpreted the word "when" as designating the time that ICE's duty to take an alien into custody first attaches, rather than a deadline by which detention must have been fully accomplished. *Id.* at 8.[5] In support of this argument, the government states that, as Congress surely understood, immediate detention under Section 1226(c) is infeasible for several reasons: (1) ICE does not track Lawful Permanent Residents ("LPRs") in the state criminal justice system, and is unable to lodge a "notice of detainer" on an LPR; (2) some delay in

---

3. The parties do not dispute that Petitioner is deportable under Section 1227(a)(2)(A)(iii), which states that an alien is deportable if he or she "is convicted of an aggravated felony at any time after admission."

4. Neither party has objected to the Magistrate Judge's finding that Section 1226(c) applies to Petitioner even though he was only in pre-conviction custody following his arrest, and was not placed into physical custody following his conviction, and declining to follow the Bureau of Immigration Appeals' holding in *Matter of Kotliar*, 24 I. & N. Dec. 124 (BIA 2007), to the extent it is contrary to that finding. [Doc. 20 at 5–8]. The Court will adopt that finding.

5. Although it appears to be the government's consistent position throughout its submissions that the term "when," in the context of release from custody, is ambiguous, at one point in its objections, the government "urges the Court to find either (1) 'when the alien is released' is unambiguous and means 'immediately' or 'at the exact moment of release,' if that is what it intends, or (2) this term is ambiguous, and give deference to the BIA holding in *Matter of Rojas*. Doc. 23 at 12. The Court believes that this Order responds to the government's request, finding that the term is unambiguous and means immediately upon release.

detention is reasonable, and even necessary, to prevent mandatory detentions of non-qualifying aliens; and (3) officer safety may outweigh the need for immediate detention. *Id.* at 10–17; Doc. 27 at 5.

■ As the Magistrate Judge notes, while the Tenth Circuit has not addressed whether the mandatory detention provision of Section 1226(c) should apply to an alien who was not taken into custody immediately upon release, both this Court and the majority of other federal district courts to have ruled on the issue have found that the term "when the alien is released" *unambiguously* means immediately upon release, and accordingly, have rejected the BIA's interpretation of Section 1226(c) in *Rojas.* Doc. 20 at 9–12 (citing *Valdez v. Terry,* 874 F.Supp.2d 1262 (D.N.M.2012); collecting cases).[6] The government argues that the Court "should not be distracted by these prior decisions," and cites to other decisions denying habeas petitions in similar circumstances. Doc. 27 at 4–5. The Court recognizes that, regardless of how many other courts have followed or rejected *Rojas,* those decisions are not binding on this Court. Nonetheless, the Court finds the reasoning in *Valdez,* and the other district court cases that found the language at issue to be unambiguous, to be persuasive. Accordingly, the Court agrees with the Magistrate Judge that Section 1226(c) is not ambiguous, and that the word "when" in the context of release from custody means immediately upon release.

The Court finds that this interpretation of Section 1226(c) comports with the Congressional intent behind the statute to prevent problems locating criminal aliens for deportation after their release, because, if those aliens are immediately detained, they pose no flight risk and the intent behind mandatory detention is attained. Doc. 20 at 13–15 (citing *Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003)). This interpretation further comports with the Congressional intent to detain the most dangerous criminals because their immediate detention provides more protection to the community. Doc. 20 at 14 (*citing Demore,* 538 U.S. at 531, 123 S.Ct. 1708 ("[T]he justification for 8 U.S.C. 1226(c) is based upon the Government's concerns over the risks of flight and danger to the community.")). Moreover, if the term "when the alien is released" means that the Attorney General shall take into custody any aliens who have committed offenses enumerated within Section 1226(c)(1)(A)-(D) without regard to the timing of that alien's release from custody, then the phrase "when the alien is released" becomes meaningless surplusage. Doc. 20 at 13. Finally, mandatory detention is a harsh penalty that should be strictly and narrowly enforced. *Id.* at 14 (citing *Zadvydas v. Davis,* 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (stating that "[a] statute permitting indefinite detention of an alien [raises] serious constitutional problems]" and, therefore, detention must comport with the Due Process Clause; "government detention violates that clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections ... or, in certain special and narrow nonpunitive circumstances, ... where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in

6. Pursuant to the government's Notice of Supplemental Authority [Doc. 15], the Magistrate Judge also recognized that one Circuit Court has reached the opposite conclusion, holding the term "when the alien is released" to be ambiguous, and deferring to *Rojas. Id.* at 12 (citing *Hosh v. Lucero,* 680 F.3d 375 (4th Cir.2012)). This Court, too, has considered the supplemental authority offered by the government.

avoiding physical restraint") (citations omitted)).[7]

In light of this analysis, the Court cannot find the government's arguments regarding the infeasibility of immediate mandatory detention to be determinative. The government asks the Court to consider the "practical realities" of immigration law, including the facts that ICE does not track LPRs in the state criminal justice system, it is improper for ICE to lodge a detainer against an LPR, delay in detention can protect an individual's due process rights "by ensuring that his detention was correct and safely executed," and officers face risks in interviewing and detaining LPRs at their home, rather than waiting for their probation appointments. Doc. 23 at 10–17. As the Magistrate Judge found, it would be improper for the Court to base its interpretation of the statute on these considerations. *See* Doc. 20 at 14–17. As an initial matter, the Court agrees with the Magistrate Judge, and with Petitioner, that there is no evidentiary support for the government's arguments. Further, the Court is not at liberty to read into the statute exceptions that Congress did not contemplate, such as exceptions for LPRs who are not eligible for detainers, or for delay designed to protect due process rights. Indeed, reading such exceptions into the statute would defeat Congressional intent to prevent problems locating criminal aliens for deportation after their release and to detain the most dangerous criminals. Finally, the Court finds no support in the legislative history of Section 1226(c) to demonstrate, as the government contends, "that Congress was clearly aware of DHS's limitations and did not want those limitations to translate into windfalls for criminal and terrorist aliens." Doc. 27 at 5.[8] For these reasons, the Court rejects the government's first objection.

## II. Imposing a Sanction for Failing to Meet a Hortatory Deadline

The government's second objection to the PF & RD is that the deadline set forth in Section 1226(c) is hortatory, rather than mandatory, and that the Court thus may not sanction the government for its failure to comply with the deadline. The government's objection continues that, by recommending that the Court find that Petitioner is not subject to mandatory detention pursuant to Section 1226(c), but rather is entitled to a bond hearing pursuant to Section 1226(a), the Magistrate Judge recommends just such an improper sanction. According to the government, "the Court cannot shift an alien's detention from a statute's sub-section to the other sub-section without that judicial shift being a sanction, because that change of statutory authorities is a termination of ICE's authority to implement the otherwise applicable statute." Doc 23 at 21.

The Court disagrees with both premises underlying the government's argument, namely, that the Magistrate Judge construed the deadline in Section 1226(c) to be mandatory and that, based on this con-

---

**7.** In its reply, the government argues that *Zadvydas* is not controlling, as the instant case involves pre-order detention rather than post-order detention, and pre-order detention is "constitutionally permissible." Doc. 27 at 6. The Court, however, is not preventing the government from detaining Petitioner "pre-order," or opining on the constitutionality of such detention. Rather, the Court is holding only that Petitioner is entitled to a bond hearing before detention, in part because of the harsh nature of mandatory detention—of any duration and at any point.

**8.** The Court further notes that entitlement to a bond hearing is hardly a "windfall." Moreover, the Court takes issue with the government's categorization of aliens who fall within Section 1227(a)(2)(A)(iii) as "criminal and terrorist aliens."

struction, recommended that the Court sanction the government for its failure to meet its deadline. As an initial matter, the Magistrate Judge specifically found that the deadline is not mandatory. *See* Doc. 20 at 18. Further, the Magistrate Judge did not recommend that Petitioner be released, but rather that the Court merely order that Petitioner be given a bond hearing so that an immigration judge can determine whether he is a threat to the community or a flight risk. At that hearing, the government will be allowed to make its arguments for detention based on flight risk and danger. The government thus is not being deprived of the only essential governmental power at issue here: the power to detain deportable aliens. Under these circumstances, the Court does not agree that adoption of the Magistrate Judge's recommendation to afford Petitioner a bond hearing would constitute a sanction.

The cases cited by the government do not convince the Court otherwise, as in each of those cases, the "sanction" imposed for noncompliance with a statute was the complete loss of a specific power. *See, e.g., In re Williams,* 330 F.3d 277, 279–281 (4th Cir.2003)(holding that when a court of appeals fails to authorize the filing of a second or successive habeas corpus application within the statutory 30–day deadline, the court is not deprived of its ability to deny the application after that deadline has passed if the importance and complexity of the issues presented justify an extension of the deadline); *Holland v. Pardee Coal Co.,* 269 F.3d 424, 429–32 (4th Cir.2001)(holding that the Social Security Administration's authority to assign retired coal miners for payment of health care premiums was not extinguished when the miners were assigned after the statutory deadline had passed). In contrast, here, requiring the government to argue for detention at a bond hearing, rather

than detaining Petitioner as a matter of right, does not strip the government of its right to detain an alien who is properly subject to detention; rather, it requires the government to establish the need for such detention at a bond hearing. This can hardly be described as an onerous burden, much less a complete loss of governmental power. *See United States v. Montalvo–Murillo,* 495 U.S. 711, 718, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990)(the sanction for breach of a statutory provision imposing a duty to act before a specific date "is not loss of all later powers to act"). Accordingly, the Court rejects the government's second objection.

## CONCLUSION

The Court finds that neither of the government's objections to the PF & RD are well-taken. The Court agrees with the Magistrate Judge that Petitioner is entitled to a Section 1226(a) bond hearing.

**IT IS THEREFORE ORDERED** that the government's objections to the PF & RD [Doc. 23] are **OVERRULED.**

**IT IS FURTHER ORDERED** that the government's Notice of Supplemental Authority [Doc. 15] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Magistrate Judge's *Proposed Findings and Recommended Disposition* [Doc. 20] is **ADOPTED** by the Court.

**IT IS FURTHER ORDERED** that Petitioner's *Petition For Writ Of Habeas Corpus And Immediate Release From Custody* [Doc. 1] is **GRANTED,** as follows: Petitioner shall be provided an individualized bond hearing pursuant to 8 U.S.C. Section 1226(a) **within 21 days of entry of this Order;** if no such hearing is held within that time period, Petitioner shall be released pending issuance of a removal order.

IT IS FURTHER ORDERED that this case be **DISMISSED WITH PREJUDICE** and that a final judgment be entered concurrently with this order.

IT IS SO ORDERED.